UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:23-CV-00495-CHB

ALISHA B.                                                          PLAINTIFF

VS.

MARTIN O'MALLEY,
*Commissioner of Social Security*[1]                              DEFENDANT

## REPORT AND RECOMMENDATION

Claimant Alisha B. appeals from the final determination of the Commissioner of Social Security denying her application for disability insurance benefits. (DN 1). Claimant has filed a Fact and Law Summary. (DN 12). The Commissioner has responded in a Fact and Law Summary. (DN 15). Claimant filed a Reply Brief (DN 16). The District Judge has referred the case to the undersigned United States Magistrate Judge for consideration and preparation of a Report and Recommendation, as authorized in 28 U.S.C. § 636(b)(1)(B). (DN 11).

### I. Findings of Fact

Alisha B. ("Claimant") applied for child's insurance benefits and supplemental security income benefits on September 23, 2021, alleging disability beginning on July 3, 2008. (Transcript, hereinafter, "Tr." 178-191). She alleged disability based on postural orthostatic tachycardia syndrome (POTS), her heart stopping randomly, celiac disease, gastroparesis disease, clinical depression, borderline personality disorder, generalized anxiety disorder, autism, attention deficit disorder, and polycystic ovarian syndrome. (Tr. 209). Claimant's applications were denied at both the initial and reconsideration levels. (Tr. 66-95).

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Federal Rule of Civil Procedure 25(d), Martin O'Malley is substituted for Kilolo Kijakazi as Defendant in this case.

At Claimant's request, Administrative Law Judge Jeffrey Eastham ("ALJ Eastham") conducted a hearing in Louisville, Kentucky on September 29, 2022. (Tr. 38-40). Claimant attended the hearing by telephone with her attorney.[2] (*Id.*). An impartial vocational expert also participated in the hearing. (*Id.*).

During the hearing, Claimant testified to the following. She is in her early thirties and has completed four or more years of college. (Tr. 42). Claimant has been in counseling for almost four years and has been taking mental health medication during that time. (Tr. 43). The medication helps her stay calm and panic less. (*Id.*). Despite this medication, she estimates having a panic attack "once a week or once every two weeks." (Tr. 44-45). Claimant initially lived alone in an apartment, but after she attempted suicide, her mother moved in to "keep an eye on [her]." (Tr. 45). Claimant refused treatment or hospital admission following her suicide attempt. (*Id.*). As recently as the week before the hearing, Claimant had suicidal thoughts and "just wanted everything to stop." (Tr. 53). She says she leaves the house about once a week with her mom or dad to "just get out and get fresh air." (Tr. 54).

As for her POTS, she takes medication that keeps her from fainting but does not keep her from collapsing. (Tr. 48). She claims to use a wheelchair or walker whenever she goes out. (*Id.*). She collapsed about a month ago after standing up too quickly. (Tr. 50-51). Her fainting episodes began when she was 14 years old, but she was not diagnosed with POTS until 2017. (Tr. 55-56). Because of swelling in her legs, she wears compression socks and constantly elevates her legs while seated. (Tr. 51).

Claimant also deals with digestion issues, including GERD, irritable bowel syndrome, gastroparesis, and celiac disease. (Tr. 52). She states she alternates between being constipated and

---

[2] This hearing was held telephonically due to the Covid-19 pandemic with Claimant's consent. (Tr. 140-141).

having diarrhea. (*Id.*). Due to a prior injury with her right hand, she states she can only lift five to ten pounds and cannot crochet, write, or draw for long periods. (Tr. 54). She estimates being able to walk for twenty feet before needing to sit down and being able to stand for five minutes before getting dizzy. (Tr. 55).

On October 11, 2022, ALJ Eastham issued an unfavorable decision. Applying the five-step sequential analysis from 20 C.F.R. § 404.1520(a), ALJ Eastham made the following findings. First, Claimant has not engaged in substantial gainful activity since July 3, 2008, her alleged onset date. (Tr. 12). Second, Claimant has the following severe impairments: migraine headaches, postural orthostatic tachycardia syndrome, irritable bowel syndrome, depression, and anxiety. (Tr. 13). Third, Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 15). Fourth, Claimant has the residual functional capacity to perform "light work" with the following exceptions:

> [She] can frequently reach, handle, finger, and feel with the bilateral upper extremities; can occasionally climb ramps but never climb stairs, ladders, ropes, or scaffolding; frequently balance (as defined by the SCO); frequently stoop; occasionally crouch and kneel but never crawl; avoid frequent concentrated exposure to extreme temperatures, vibrations, pulmonary irritants; never to work at unprotected heights; never to work with dangerous machinery; never to operate motorized vehicles as a work requirement; no fast paced production rate work such as the rate associated with hourly quotas or conveyor belt paced work; work environment must be no louder than a moderate noise level; can have occasional related contact with supervisors and coworkers but none with the public; can tolerate occasional changes to the workplace setting that are gradually introduced.

(Tr. 17). Additionally, at Step Four, ALJ Eastham found Claimant has no past relevant work. (Tr. 23). Fifth and finally, considering Claimant's age, education, work experience, and RFC, ALJ Eastham found there were jobs that exist in significant numbers in the national economy that Claimant can perform. (Tr. 24).

ALJ Eastham concluded Claimant was not under a disability, as defined in the Social Security Act, from July 3, 2008, through the date of the decision. (Tr. 25). Claimant appealed ALJ Eastham's decision. (Tr. 173-174). The Appeals Council declined review, finding Claimant's reasons for disagreement did not provide a basis for changing ALJ Eastham's decision. (Tr. 1). At that point, the denial became the final decision of the Commissioner, and Claimant appealed to this Court. (DN 1).

## II. Standard of Review

Administrative Law Judges make determinations as to social security disability by undertaking the five-step sequential evaluation process mandated by the regulations. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); 20 C.F.R. §§ 404.1520(b), 416.920(b). Throughout this process, the claimant bears the overall burden of establishing they are disabled; however, the Commissioner bears the burden of establishing the claimant can perform other work existing in significant numbers in the national economy. *Id.* at 804 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th

Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

### III. Conclusions of Law

Claimant's Fact and Law Summary outlines at least seven claims of error from ALJ Eastham's decision. The Commissioner maintains that ALJ Eastham's decision was supported by substantial evidence and applied the correct legal standards. The Court will address each of Claimant's perceived errors in turn.[3]

### A. ALJ Eastham's Step-Three Evaluation of Claimant's Postural Orthostatic Tachycardia Syndrome (POTS)

Claimant argues ALJ Eastham failed to evaluate her POTS under Listing 4.05. (DN 12, at PageID # 1288-89). According to Claimant, her POTS symptoms and laboratory findings "including syncope, presyncope, Holter monitor and tilt table test" are the same or equivalent to the requirements of Listing 4.05. (*Id.*). Claimant submits that Listing 4.05 requires "recurrent symptoms" and that ALJ Eastham made no finding that her symptoms were not reoccurring. (*Id.* at PageID # 1288). The ALJ also erred, Claimant argues, by failing to consider the exacerbation of Claimant's POTS by her mental impairments, specifically her anxiety disorder. (*Id.* at PageID # 1286, 1289).

---

[3] Claimant asserts broad categories of error. But within each category, Claimant throws out several phrases, with little analysis, in apparent hope that something will stick. Despite Claimant adopting the "kitchen-sink" approach, the Commissioner's lengthy brief responds to each of Claimant's assertions, even those which would otherwise be deemed waived based on Claimant's failure to meaningfully develop the claim. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("'[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.'") (quoting *Citizens Awareness Network, Inc. v. U.S. Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995)).

The Commissioner responds that ALJ Eastham appropriately evaluated Claimant's POTS under Listing 11.02 (epilepsy) and that Claimant has not pointed to specific evidence proving she could meet or medically equal each criterion from Listing 4.05. (DN 15, at PageID # 1311-12). The evidence Claimant marshalled in support of meeting Listing 4.05, the Commissioner explains, is insufficient. (*Id.*). Additionally, the Commissioner asserts Claimant's medical equivalency argument fails because no medical source made a finding of medical equivalency as required by Social Security Ruling 17-2p. (*Id.* at PageID # 1315). As for mental exacerbation of her POTS, the Commissioner states Claimant fails to reference any evidence showing the presence of mental exacerbations, stress in the workplace, and the sustained activities of standing/walking that ALJ Eastham should have considered in evaluating her POTS. (*Id.* at PageID # 1312-13). The Commissioner further emphasizes that ALJ Eastham considered all of Claimant's impairments together by stating on multiple occasions that he considered the entire record and all of Claimant's symptoms. (*Id.* at PageID # 1315).

Claimant's reply disagrees with the Commissioner's suggestion that she has not pointed to evidence showing she could reasonably equal the criteria of Listing 4.05. (DN 16, at PageID # 1342). Claimant identifies the tilt table and Holter monitor tests again, along with records she believes demonstrate a frequency of three pre-syncopal occurrences per year beginning in June 2018 and continuing through January 2023. (*Id.* (citing Tr. 313, 315, 562, 567, 568, 569, 577, 578, 598, 599, 605, 606, 616, 618, 619, 622, 669, 773, 777, 782, 783, 850)). This is "sufficient evidence," Claimant argues, to create an issue for a decision by the trier of fact as to whether her almost daily dizziness/light-headedness and orthostatic hypotension is medically equivalent to Listing 4.05's criteria. (*Id.* at PageID # 1343). As for the Commissioner's SSR 17-2p argument, Claimant argues the Ruling is "internally inconsistent" and contradicts 20 C.F.R. §§ 404.1526,

416.926 by shifting the responsibility for determining medical equivalence from the ALJ to a consultant or medical source. (*Id.* at PageID # 1345-46).

Step three of the sequential evaluation process requires the claimant prove she has an impairment or combination of impairments that meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpt. P, App'x 1. 20 C.F.R. § 404.1520(a)(4)(iii); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). In determining whether a claimant meets or equals a listed impairment, an ALJ must "actually evaluate the evidence, compare it to [the relevant listed impairment], and give an explained conclusion, in order to facilitate meaningful judicial review." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011). An ALJ "need not discuss listings that the [claimant] clearly does not meet, especially when the claimant does not raise the listing before the ALJ." *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641 (6th Cir. 2013). But, where "the record 'raise[s] a substantial question as to whether [the claimant] could qualify as disabled' under a listing, the ALJ should discuss that listing." *Id.* (quoting *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)).

If an ALJ fails to discuss a particular listing, the Court "must determine whether the record evidence raises a substantial question as to [a claimant's] ability to satisfy each requirement of the listing." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 433 (6th Cir. 2014). To raise a substantial question, the claimant "must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing." *Id.* at 432 (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of the criteria, no matter how severely, does not qualify."); *Foster*, 279 F.3d 348, 354-55 (6th Cir. 2001)). Merely pointing to evidence on which the ALJ could have based a Listing finding will not suffice. *Sheeks*,

544 F. App'x at 641-42 (finding that claimant pointing to a few pieces of tenuous evidence addressing the listing did not raise a substantial question as to satisfying the listing).

At Step Three, ALJ Eastham noted that there is no listing corresponding directly to POTS but that he considered the listings of 11.00, particularly Listing 11.02 (Epilepsy). (Tr. 15). In doing so, ALJ Eastham stated that there was "no evidence for tonic-clonic or dyscognitive seizures occurring at the requisite intervals despite adherence to prescribed treatment, and no evidence for marked limitations in physical functioning, understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, or adapting and managing oneself." (*Id.*). ALJ Eastham did not discuss Listing 4.05.

A claimant meets Listing 4.05 where recurrent arrhythmias "not related to reversible causes, such as electrolyte abnormalities or digitalis glycoside or antiarrhythmic drug toxicity" result in "uncontrolled, recurrent episodes of cardiac syncope or near syncope, despite prescribed treatment, and documented by resting or ambulatory (Holter) electrocardiography, or by other appropriate medically acceptable testing, coincident with the occurrence of syncope or near syncope." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, Listing 4.05 (internal citations omitted). "Uncontrolled" means the impairment does not adequately respond to standard prescribed medical treatment; "[r]ecurrent means that the longitudinal clinical record shows that, within a consecutive 12-month period, the finding(s) occurs at least three times, with intervening periods of improvement of sufficient duration that it is clear that separate events are involved." *Id.*, Listing 4.00A3c, f. "Syncope" is defined as "a loss of consciousness or a faint" while "near syncope" is defined as "a period of altered consciousness." *Id.*, Listing 4.00F(3)(b). Another District has helpfully condensed the Listing as follows: "arrhythmias not related to reversible causes that accepted diagnostic methods establish are associated with at least three episodes of fainting or an

altered state of consciousness occurring within a year in spite of adherence to standard prescribed medical treatment." *Caitlin O. v. Kijakazi*, No. 17-cv-1939 (JMC/GMH), 2022 WL 17370231, at *17 (D.D.C. Oct. 27, 2022).

To support that she can meet or medically equal Listing 4.05, Claimant points to three categories of evidence. First, she references Dr. Valayam's May 6, 2020 note of a "positive tilt table test with improvement on increased dosages of Florinef" and prescription of a "wheeled walker per patient request because of significant orthostatic hypotension and presyncopal episodes." (DN 12, at PageID # 1287 (citing Tr. 569)). Claimant next references her "frequent PVCs (premature ventricular contractions)," which were confirmed by a Holter monitor test in 2018. (*Id.* (citing Tr. 612)). And finally, Claimant cites to records she believes demonstrate three pre-syncopal occurrences per year beginning in June 2018 and continuing through January 2023. (DN 16, PageID # 1342 (citing Tr. 313, 315, 562, 567, 568, 569, 577, 578, 598, 599, 605, 606, 616, 618, 619, 622, 669, 773, 777, 782, 783, 850)).

The records Claimant cites reveal that in June of 2018, she reported to APRN Martina Mouser that she was "fainting more frequently," with the last episode of syncope occurring approximately two weeks prior. (Tr. 619, 622). APRN Mouser referred Claimant to Dr. Valayam in cardiology and ordered Holter monitor testing. (*See* Tr. 622-23). At a consultation appointment several weeks later with Dr. Valayam, Claimant reported being "always dizzy when getting up to walk" and passing out several times, with the last episode being one month back. (Tr. 616-18). Claimant's Holter monitor testing revealed "frequent isolated PVCs [premature ventricular contractions] with no arrhythmias." (*Id.*). These reports spurred her doctor to order the tilt table test and an echocardiogram and to prescribe Claimant a low-dose beta blocker for PVC suppression. (Tr. 616-18). Claimant's tilt table test occurred in August 2018, and Claimant

experienced a "syncopal episode" twenty-eight minutes into the test. (Tr. 315).

Dr. Valayam prescribed Florinef for Claimant's syncope in October of 2018. (Tr. 605-06). During her next visit in January of 2019, Claimant reported no syncopal episodes after starting Florinef. (*Id.*). Dr. Valayam increased her dosage of Florinef in May of 2019 because her "presyncopal episodes [were] less frequent but still present." (Tr. 598-99). At her next four follow-up visits in October 2019, May 2020, December 2020, and July 2021, Claimant reported that she was tolerating Florinef and had no recent syncopal episodes but experienced frequent dizziness and occasional episodes of intermittent lightheadedness. (Tr. 562, 567-68, 569 ("she still gets dizzy quite frequently"), 577-58 ("dizzy spells are still persisting almost on a daily basis")). During the May 2020 visit, Dr. Valayam gave Claimant a prescription for a wheeled walker "per patient request because of significant orthostatic hypotension and presyncopal episodes." (Tr. 569).

This evidence does not raise a substantial question as to whether Claimant can meet the criteria in Listing 4.05. The records from October 2018 and going forward demonstrate that Claimant's syncopal episodes were stabilized and controlled by Florinef therapy. Though Claimant consistently reported dizziness and lightheadedness during this time, such symptoms do not equate to altered consciousness under the regulations. *Rhinebolt v. Comm'r of Soc. Sec.*, No. 2:17-cv-369, 2017 WL 5712564, at *6 (S.D. Ohio Nov. 28, 2017) ("Merely feeling lightheaded or dizzy does not amount to near syncope."); (citing *Linderman v. Comm'r of Soc. Sec.*, No. 1:16-cv-944, 2017 WL 2304281, at * (N.D. Ohio Apr. 6, 2017) ("Near syncope is not 'merely a feeling of lightheadedness, momentary weakness, or dizziness.'")). And even if lightheadedness and dizziness could constitute near syncope, Claimant's POTS responded to prescribed medical treatment. Although Dr. Valayam prescribed Claimant a wheeled walker during this period, it was at the Claimant's request and, therefore, does not demonstrate that Claimant's "presyncopal

episodes" rose to the level required to establish "near syncope" under the Listing.

While the records from APRN Mouser and Dr. Valayam in June and August of 2018 appear to demonstrate that Claimant suffered several separate syncopal episodes within one year and are supported by Claimant's positive tilt table test coincident with the occurrence of syncope, the records do not demonstrate her episodes were "uncontrolled." The definition section of Listing 4.00 explains that an "uncontrolled" impairment "does not adequately respond to standard prescribed medical treatment." Medical treatment for the impairment, accordingly, is a requirement of meeting the listing. *See Ingram v. Comm'r of Soc. Sec.*, No. 2:21-cv-10267, 2022 WL 1734936, at *9-10 (E.D. Mich. Jan. 26, 2022) (stating that a claimant is disabled under Listing 4.05 if they experience recurrent arrhythmias "despite medical treatment" and that standard medical treatment for arrythmia include "medication, an implanted pacemaker, or an implanted cardiac defibrillator"). None of the records cited by Claimant demonstrate that she was prescribed any medical treatment at the time of her syncopal episodes in 2018.

Additionally, Claimant fails to demonstrate that her syncopal episodes were tied to recurrent arrhythmias. While Claimant cites to the Holter monitor testing that showed "frequent PVCs," she doesn't cite to any evidence identifying arrythmias. In fact, APRN Mouser's August 7, 2018 record states Claimant's Holter monitor "showed frequent PVCs *with no arrhythmias*." (Tr. 313 (emphasis added)).

Nor has Claimant raised a substantial question as to whether she can medically equal the criteria of Listing 4.05. There are three ways that an ALJ may find medical equivalence:

(1)(i) If you have an impairment that is described in Appendix 1, but –

(A) You do not exhibit one or more of the findings specific in the particular listing, or

(B) You exhibit all of the findings, but one or more of the findings is not as severe

as specified in the particular listing,

(ii) We will find that your impairment is medically equivalent to that listing if you have other findings related to your impairment that are at least of equal medical significance to the required criteria.

(2) If you have an impairment(s) that is not described in appendix 1, we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairment(s) are at least of equal medical significance to those of a listed impairment, we will find that your impairment(s) is medically equivalent to the analogous listing.

(3) if you have a combination of impairments, no one of which meets a listing (see § 404.1525(c)(3)), we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairments are at least of equal medical significance to those of a listed impairment, we will find that your combination of impairments is medically equivalent to that listing.

20 C.F.R. § 404.1526(b); Social Security Ruling 17-2p, 2017 WL 3928306, at *3-4 (Mar. 27, 2017) (summarizing the three ways the SSA can find medical equivalence).

The regulation for medical equivalence "allows for variation in the number, type, or severity of the claimant's conditions, so long as the claimant's overall impairment is 'at least of equal medical significance' to a listed impairment." *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 784 (6th Cir. 2017) (quoting 20 C.F.R. § 404.1526(b)). Stated otherwise, medical equivalency may come into play "where a claimant has an impairment with a severity that almost, but not quite, meets a listing." *Thomas o/b/o C.T. v. Berryhill*, No. 18-2467-TLP-tmp, 2019 WL 7580293, at *10 (W.D. Tenn. Nov. 7, 2019).

Looking to those regulatory requirements, the first near-applicable section would be § 406.1526(b)(1)(i)(A) because Claimant fails to meet one or more of the findings specific to Listing 4.05. Unfortunately, other than providing general citations to Claimant's medical records, Claimant does not demonstrate how she medically equals the criteria she cannot outright meet. Claimant has not argued the existence of other findings that are "at least of medical significance"

12

to the criteria she cannot exhibit, namely having recurrent arrhythmias and uncontrolled episodes.

Claimant also seems to argue that § 406.1526(b)(3) applies, by stating ALJ Eastham failed to consider whether Claimant's POTS was exacerbated by her mental impairments. Again, Claimant's argument is cursory. She cites *Blankenship v. Bowen*, 874 F.2d 1116, 1123-24 (6th Cir. 1989) to support that ALJ Eastham failed to consider Claimant's anxiety disorder in combination with her POTS syndrome. However, ALJ Eastham stated on several occasions that he considered all of claimant's medically determinable impairments and symptoms. His step-three analysis makes clear that he considered Claimant's POTS and anxiety in combination because he evaluated Claimant's POTS under Listing 11.02, which requires proof of marked limitations in several domains identical to those required for mental impairments under Listings 12.04 and 12.06. (Tr. 15). Critically, Claimant fails to explain how the combination of Claimant's anxiety with her POTS would have resulted in a finding that Claimant could medically equal Listing 4.05. Claimant's undeveloped attempts at demonstrating the medical equivalence of her impairment to Listing 4.05 fail.

Even though ALJ Eastham did not discuss Listing 4.05 in his step-three analysis, he exhaustively considered the evidence Claimant relies on in evaluating Claimant's RFC at step four. (Tr. 19). He ultimately concluded that the record did not support Claimant's allegations regarding the intensity and frequency of her POTS related episodes. (*Id.*). A reviewing court may consider an ALJ's evaluation of health records that were discussed at other steps of his decision. *Smith-Johnson*, 579 F. App'x at 435 (citing *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006)). Because ALJ Eastham appropriately examined the record relating to Claimant's POTS, and such evidence shows Claimant cannot meet or medically equal Listing 4.05, ALJ Eastham did not err at step three by failing to discuss the Listing. *See, e.g., Brown v. Comm'r of Soc. Sec.*, 2:19-CV-

12965-TGB-DRG, 2021 WL 3240392, at *5 (E.D. Mich. July 30, 2021) (finding court appropriately examined record to determine claimant could not meet the listing and that ALJ did not err in failing to discuss it).

It is not necessary for the Court to resolve the Parties' dispute regarding whether SSR 17-2p forecloses Claimant's arguments regarding medical equivalency because Claimant has not raised a substantial question regarding medical equivalency. Regardless, this District and others have determined SSR 17-2p does not automatically require the ALJ to obtain a medical opinion before reaching a decision on medical equivalence, "but the ALJ must obtain a medical opinion to find that Plaintiff *does* medically equal a listing." *See Brown v. Saul*, No. 4:20-CV-00052-JHM-HBB, 2021 WL 1554904, at *5 n. 5 (W.D. Ky. Mar. 18, 2021); *Thomas o/b/o C.T.,* 2019 WL 7580293, at *10 ("the agency's chosen interpretation – that ALJs should obtain medical opinion evidence if the evidence in the record reasonably supports such a finding, but need not do so otherwise - is one such reasonable interpretation of this ambiguous regulatory text."). It follows that ALJ Eastham did not need to obtain an opinion on medical equivalency as to Listing 4.05 since he did not find Claimant medically equaled a listing.

B. ALJ Eastham's Evaluation of Claimant's POTS in the Residual Functional Capacity

Claimant's next argument dissects ALJ Eastham's evaluation of Claimant's POTS in forming Claimant's residual functional capacity.

First, Claimant states ALJ Eastham failed to explain how she could tolerate "changes in posture from either frequently stooping and occasionally crouching and kneeling back to an erect position" or how frequent balancing would "exclude[] orthostatic position changes in order to achieve the balancing position." (DN 12, at PageID # 1290). According to Claimant, stooping requires bending forward at the waist and crouching requires bending the legs and spine downward

14

and forward. (*Id.* (citing SSR 83-10). ALJ Eastham should have explained why the frequent balancing in the RFC excludes orthostatic position changes to achieve the balancing position, states Claimant. (*Id.*).

The Commissioner responds that Claimant misunderstands the burden of proof and fails to point to any evidence demonstrating that more severe postural restrictions were warranted. (DN 15, at PageID # 1317). The Commissioner further asserts that ALJ Eastham was not obligated to explain why more restrictive limitations are not supported by the record. (*Id.*). In reply, Claimant reiterates the ALJ included no limitation on bending nor any rationale as to why "this orthostatic change was allowable on an unlimited basis." (DN 16, at PageID # 1346).

Claimant has not proven reversible error results from ALJ Eastham not specifying a restriction as to bending or not specifically discussing Claimant's ability to change positions based on the RFC restrictions. She does not point to specific evidence that demonstrates a separate restriction as to bending was necessary or that further restrictions as to orthostatic position changes were warranted. Though Claimant believes ALJ Eastham should have explained why he was not including such limitations, ALJs are not required to explain every restriction they decline to include.

Claimant next alleges ALJ Eastham failed to sufficiently explain how she can safely work within a light RFC or how the stress of sustained work "would not affect and/or exacerbate the situation." (*Id.*). Claimant emphasizes that while she was medicated and not working, she remained symptomatic. (*Id.*). Claimant additionally believes ALJ Eastham failed to explain how her syncopal symptoms lasting into 2019 and her presyncopal symptoms continuing into 2021 do not establish at least twelve months of disability. (*Id.*).

According to the Commissioner, ALJ Eastham explicitly considered Claimant's dizziness and lightheadedness in the RFC and included limitations that accounted for her POTS symptoms. (DN 15, at PageID # 1317). Because Claimant generally fails to point to evidence that supports she could not safely perform light work or that stress in the workplace would exacerbate her symptoms, the Commissioner maintains she has not carried her burden of proof. (*Id.*). Though Claimant alleges she was taking medication for her POTS but was still symptomatic, the Commissioner references the ALJ's unrebutted finding that Claimant's treatment notes from December 2020 to July 2021 showed that she was prescribed medication but decided not to take it due to concerns about potential side effects. (*Id.* at PageID # 1318-19). The remainder of the prescribed treatment for Claimant's POTS, including adequate hydration, high salt diet, compression stockings, and lower extremity strength training, the Commissioner explains, were routine and conservative in nature and fail to establish disabling limitations. (*Id.* at PageID # 1319).

In reply, Claimant says the Commissioner fails to cite the medical evidence that reported her concerns with potential side effects, that there was no finding of noncompliance in the relevant record, and that the doctor noted further medication options for Claimant were quite limited. (DN 16, at PageID # 1347). Additionally, Claimant feels the Commissioner fails to present medical evidence that the medication Claimant did not take would restore her ability to do substantial gainful activity or that Claimant's decision not to take the medication was unreasonable. (*Id.*).

Unpacking first Claimant's allegations regarding her syncopal/presyncopal symptoms, the Court finds ALJ Eastham conducted an in-depth review of Claimant's POTS symptoms throughout the medical record. (Tr. 18-19). In doing so, ALJ Eastham noted Claimant's reports of syncopal episodes in 2018, her tilt table test results, her echocardiogram results, records reflecting almost daily dizzy spells in October 2019, reports of her symptoms improving in May 2020 after starting

Florinef therapy, and reports in December 2020 and July 2021 of intermittent lightheadedness. (*Id.*). He determined the record did not support Claimant's allegations regarding the intensity and frequency of her POTS. (Tr. 19). Ultimately, however, ALJ Eastham's RFC accounted for Claimant's ongoing POTS symptoms by restricting her to occasional climbing of ramps with no climbing of stairs, ladders, ropes or scaffolding; frequent balancing and stooping; occasional crouching and kneeling but never crawling; never working at unprotected heights; never working with dangerous machinery; and never operating motorized vehicles as a work requirement. (Tr. 17). ALJ Eastham's evaluation of Claimant's POTS symptoms is supported by substantial evidence in the record; the Court finds no error.

Nor did ALJ Eastham err in considering that Claimant was prescribed medication for her ongoing mild symptoms that she ultimately did not take. SSR 16-3p instructs that an ALJ may consider a claimant's noncompliance with medication so long as he considers possible reasons why he or she may not comply with treatment. 2017 WL 5180304, at *9 (Oct. 15, 2017) ("[I]f the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. We will not find an individual's symptoms inconsistent with the evidence on this basis without considering possible reasons he or she may not comply with treatment . . . ."). ALJ Eastham explicitly noted that Claimant reported she never started the prescribed medication "due to concerns over potential side effects." (Tr. 19). ALJ Eastham's analysis, accordingly, does not violate SSR 16-3p.

Turning to Claimant's allegation that ALJ Eastham failed to sufficiently explain how she can safely work within a light RFC, the Court finds no error. Beyond this argument being cursory and undeveloped, the Court agrees with the Commissioner that Claimant improperly attempts to

shift the burden of proof to ALJ Eastham. Arguably, ALJ Eastham's thorough and exhaustive discussion of Claimant's POTS, along with her other physical and mental impairments, explained exactly how Claimant can safely work within the light RFC. ALJ Eastham afforded Claimant restrictions based on the entirety of the case record.

Next, Claimant takes issue with ALJ Eastham's evaluation of whether Claimant needs a wheeled walker. Dr. Valayam's notes from May 6, 2020 stated that he would give Claimant "a prescription for a wheeled walker per patient request because of significant orthostatic hypotension and presyncopal episodes." (Tr. 569). In his RFC assessment, ALJ Eastham determined the "medical evidence of record does not demonstrate the medical necessity of an assistive device for ambulation." (Tr. 20). ALJ Eastham discussed the evidence relating to Claimant's use of a medical device:

> At the hearing, the claimant testified she needs an ambulatory device. There is one notation in the objective record regarding an assistive device. During a six-minute telehealth visit in May 2020, the claimant requested and was prescribed a wheeled walker for orthostatic hypotension and pre-syncopal episodes. In a July 2022 patient questionnaire completed by the claimant, she reported a number of symptoms but did not indicate she uses a cane or a walker. (Ex 8F page 26; Ex 20F page 16). There are no other notations concerning a walker or a cane.

(*Id.*). ALJ Eastham then described the regulations governing assistive devices:

> Current regulations require "a documented medical need" for any type of assistive device, meaning that there is evidence from a medical source that supports the medical need for a continuous period of at least 12 months. The evidence must describe any limitations in upper or lower extremity functioning and the circumstances for which there is a need to use the assistive device. The evidence must describe how the claimant actually walks with the device (Listing 1.00(C)(6)).

(*Id.*). ALJ Eastham found that "the evidence establishing the need to use a cane/walker, even with the prescription, is non-existent." (*Id.*). He highlighted how there was no documentation regarding a medical need for at least two months and no description of how Claimant must use or actually uses the device. (*Id.*). Accordingly, ALJ Eastham determined Claimant could not meet the

18

"documented medical need" requirements. (*Id.*). He concluded that "the record does not establish medical necessity for a cane or walker and there is no objective evidence corroborating the claimant's allegations that such device is required." (*Id.*).

Claimant believes her positive tilt table test serves as objective evidence corroborating the need for a wheeled walker. (DN 12, at PageID # 1292). Claimant disagrees with the ALJ's reliance on the July 2022 check-box questionnaire where the "Cane/Walker" box was not checked as evidence that she does not use the walker. (*Id.*). This lone record, Claimant asserts, does not evidence that her presyncopal symptoms were eliminated. (*Id.* at PageID # 1293). Because the ALJ omitted and mischaracterized evidence relating to Claimant's use of a wheeled walker, Claimant argues substantial evidence does not support his conclusion that she does not require a walker. (*Id.*).

The Commissioner responds that ALJ Eastham appropriately considered that other than the wheeled walker being prescribed in May 2020, no other "medical evidence" mentions it. (DN 15, at PageID # 1320). Given that the walker was not medically required and was prescribed at Claimant's request, the Commissioner argues ALJ Eastham was not obligated to include its use in either the RFC finding or in the hypothetical questions to the VE. (*Id.*). The Commissioner also explains that neither the tilt table test nor the diagnosis of POTS establishes the use of a walker as a functional limitation. (*Id.* at PageID # 1322). As for ALJ Eastham's reliance on the check-box questionnaire, the Commissioner explains he was "simply resolving conflicts in the evidence, which is his duty" as adjudicator. (*Id.* at PageID # 1322-23). The Commissioner concludes that Dr. Valayam's prescription for a walker failed to comply with SSR 96-9p and that because no other medical record mentioned her using that device, substantial evidence supported ALJ Eastham's determination. (*Id.* at PageID # 1323-24).

Claimant replies that Dr. Valayam's use of the word "significant" in describing the symptoms necessitating the wheeled walker allow a reasonable mind to consider the walker a necessary limitation of vocational significance. (DN 16, at PageID # 1346-47). As for mention of the walker in the record, Claimant argues there is no requirement that a prescription written by a specialist be repeated a particular number of times to be considered valid. According to Claimant there is no vocational basis for ALJ Eastham's RFC. (*Id.* at PageID # 1348).

Social Security Ruling 96-9p provides guidance for an ALJ's evaluation of a claimant's use of a hand-held assistive device. In relevant part, the Ruling requires "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed[.]" SSR 96-9p, 1996 WL 374185, at *7. Claimant has not proven that Dr. Valayam's one-time prescription for a walker provides sufficient detail to show that the walker was a "medical necessity" for at least a 12-month period either at that time, or at any other time, as required by SSR 96-9p. Nor does Dr. Valayam's prescription show the circumstances in which the walker was needed. As another District has noted, "evidence of a prescription for an assistive device is rarely (if ever) enough to satisfy a plaintiff's burden to show medical necessity." *Cayenne W. v. Comm'r of Soc. Sec.*, No. 2:23-cv-1282, 2024 WL 1155851, at *7 (S.D. Ohio Mar. 18, 2024) (citing *Carreon v. Massanari,* 51 F. App'x 571, 575 (6th Cir. 2002)). In similar circumstances, other courts have upheld an ALJ's decision to not include the use of an assistive device in a claimant's RFC. *See Cayenne W.,* 2024 WL 1155851, at *7 (citing *Wright v. Saul*, No. 1:18cv1724, 2019 WL 3729264, at *4 (N.D. Ohio Aug. 8, 2019) (collecting cases)).

These same courts have noted that a claimant's argument might "hold more sway" if the medical records were replete with references to the claimant's need for and use of a walker under a variety of circumstances. *Id.* Here, however, Dr. Valayam's prescription is the only mention of

Claimant needing a wheeled walker in the objective medical records. Claimant fails to point to anywhere else in the objective medical record mentioning, let alone proving, the necessity of a walker. Claimant posits that her positive tilt table test corroborates her needing a walker. But Claimant provides no support for the proposition that a positive tilt table test on its own equates to a functional limitation of needing an assistive device. Test results or diagnoses do not "automatically translate into limitations" where the claimant does not satisfy the criteria of SSR 96-9p. *Id.* (finding the claimant's speculation that her diagnoses of lumbar spine disorder, knee disorder, bilateral hip disorder, asthma and morbid obesity could negatively affect her ability to ambulate did not meet requirements of SSR 96-9p).

Additionally, courts have determined that a prescription based on a claimant's self-reported difficulties "falls short of the 'medical documentation establishing the need for a hand-held assistive device' required by SSR 96-9p." *Id.* at *8 (citing *Clevenger v. Comm'r of Soc. Sec.*, 2:19-cv-4512, 2020 WL 2092387, at *9 (S.D. Ohio May 1, 2020) (add'l citation omitted)). The fact that Dr. Valayam explicitly noted the prescription for a wheeled walker was at Claimant's request further counsels against any error in the ALJ's evaluation.

Moreover, ALJ Eastham did not err in considering that Claimant failed to mention use of the walker in the July 2022 questionnaire. The Court agrees this lone record does not demonstrate that her presyncopal symptoms were eliminated. However, the ALJ must weigh the evidence of record and, in doing so, resolve any conflicts. Claimant's failure to check the "cane/walker" box on the July 2022 questionnaire was but one instance the ALJ considered in finding the record wholly lacked support for Claimant needing a walker.

For these reasons, ALJ Eastham's evaluation of whether Claimant needed a walker is supported by substantial evidence in the record and complies with the applicable regulations.

C. ALJ Eastham's Evaluation of Claimant's Subjective Complaints

Claimant challenges ALJ Eastham's evaluation of her subjective complaints and her activities of daily living (ADLs). Claimant argues the ALJ's depiction of her ADLs conflicts with her function report, her mother's function report, and her hearing testimony. In evaluating a claimant's complaints of pain and other symptoms, ALJs apply the two-step analysis outlined in 20 C.F.R. 404.1529. The first step asks whether there is a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. *See* 20 C.F.R. § 404.1529(b); *Steagall v. Comm'r of Soc. Sec.*, 596 F. App'x 377, 381 (6th Cir. 2015) (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994)) (noting subjective complaints of pain can support disability finding if record contains "objective medical evidence" of severe condition that "can reasonably be expected to produce the alleged disabling pain."). The second step requires the ALJ to evaluate whether the claimant's statements concerning the intensity, persistence, and limiting effects of the symptoms find support in the record. *See* 20 C.F.R. § 404.1529(b); *Steagall,* 596 F. App'x at 381 ("Even when the record contains [objective medical evidence that can reasonably be expected to produce the alleged disabling pain] the ALJ may also consider the credibility of the claimant's subjective complaints."). In making this determination, the ALJ will consider:

> (i) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
>
> (iii) Precipitating or aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>
> (vi) Any measures you use or have used to relieve your pain or other

symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). The ALJ is not required to cite or discuss every factor used to evaluate the consistency of a plaintiff's description of symptoms with record evidence. *See Karen F. v. Comm'r of Soc. Sec.*, No. 2:22-cv-2951, 2023 WL 3740784, at *4 (S.D. Ohio May 31, 2023) (citing *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009) ("[T]he ALJ expressly stated that she had considered [the predecessor to SSR 16-3p], which details the factors to address in assessing credibility. There is no indication that the ALJ failed to do so. This claim therefore lacks merit . . . .")).

After recounting Claimant's testimony, ALJ Eastham applied the proper legal standard from 20 C.F.R. § 404.1529(b) and found that "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 18). ALJ Eastham then evaluated the objective medical evidence of record.

Specifically, ALJ Eastham determined Claimant had received routine treatment for her POTS and migraines consisting of medication management, recommendations to stay hydrated, increase salt consumption, exercise upper extremities, and wear compression stockings. (Tr. 18). As to Claimant's headaches, ALJ Eastham concluded Claimant received minimal ongoing treatment. (*Id.*). And as to Claimant's POTS, ALJ Eastham found her episodes were well-controlled with treatment, noting that she primarily reported dizziness rather than actual ongoing syncope. (Tr. 19). With respect to Claimant's gastrointestinal impairments, ALJ Eastham noted

the record demonstrated good control of her symptoms with medication management and diet changes and that examinations were generally unremarkable with relatively stable weight. (*Id.*). ALJ Eastham additionally found Claimant's longitudinal examinations across multiple providers were generally unremarkable and within normal limits, that the medical evidence of record did not show that her assistive device was medically required, and that her mental status examinations after September 2019 were typically within normal limits with reports that she was doing well on medication. (Tr. 19-20). ALJ Eastham also considered that despite the alleged severity of her symptoms, Claimant's activities of daily living (ADLs) included regular travel, engaging in social and leisure activities, interacting with others, knitting, and playing video games with friends. (Tr. 21-22).

Claimant takes issue with ALJ Eastham's consideration of her vacations because he did not point to any vacation activities that support sustained work. (DN 12, at PageID # 1294). The Commissioner responds that Claimant's ability to travel is relevant to her allegations regarding her mental impairments. (DN 15, at PageID # 1325). Vacation and disability are not necessarily mutually exclusive; however, a claimant's decision to take vacations may suggest that the alleged symptoms and limitations are overstated. *See, e.g., Rutledge v. Comm'r of Soc. Sec.*, No. 14-14468, 2016 WL 1294843, at *4 (E.D. Mich. Apr. 4, 2016) (finding no error where ALJ considered claimant's vacations as one factor in the entire record when assessing the claimant's subjective complaints). In this case, the ALJ reasonably observed that Claimant had taken several vacations, including a trip in June of 2019, a three-and-a-half-week trip to Florida in December of 2019, a birthday trip in June of 2021, and a one-month trip to Florida in November 2021. (Tr. 21-22). Although the medical records do not detail how Claimant traveled or her vacation activities, the fact that she was able to travel for long periods of time somewhat belies her representations that

she must elevate her legs to hip height or higher about sixteen hours during the day. Though ALJ Eastham could have more clearly expressed how Claimant's vacations detract from Claimant's claimed severity of symptoms, he did not mischaracterize the records indicating Claimant has vacationed during her claimed disability period, and no error results.

In the same vein, Claimant challenges ALJ Eastham's consideration that she engaged in normal social and leisure activities and interacted with others on a regular basis. (DN 12, at PageID # 1294). Claimant emphasizes her testimony that she goes out with a parent once a week (with her walker or wheelchair) but states ALJ Eastham did not question her on the validity of such testimony and did not discuss the type of interactions Claimant engaged in. (*Id.*). Claimant further alleges that ALJ Eastham did not consider her bouts of vomiting, nausea, and diarrhea in considering her leisure and social activities. (*Id.*). The Commissioner counters that the ALJ discussed a wide range of activities Claimant engaged in with others, including traveling with friends and family, visiting with her boyfriend, and playing online games with others. (DN 15, at PageID # 1326). As for Claimant's gastrointestinal issues, the Commissioner points out that ALJ Eastham determined those impairments were generally under good control with medication and diet, meaning they do not establish symptoms precluding social interaction. (*Id.*).

As with consideration of Claimant's vacations, ALJ Eastham did not improperly depict the evidence in stating Claimant can engage in normal social and leisure activities and interact with others regularly. Claimant fails to point to any objective evidence proving her gastrointestinal impairments impact her ability to socialize or work with others. Nor did ALJ Eastham err by failing to question Claimant regarding the types of interactions she engaged in; it was Claimant's burden, not the ALJ's, to demonstrate she was disabled, including limitations on social interaction. Moreover, ALJ Eastham's consideration of Claimant's leisure activities and social interactions

was but one of several rationales for finding that Claimant was not as limited as alleged.

Next, Claimant takes issue with ALJ Eastham's consideration of her "knitting" and "spinning wool." (DN 12, at PageID # 1294). She states ALJ Eastham failed to explain her ability to knit in light of her mother's report that she can't knit or crochet as much as she used to due to her hands. (*Id.* (citing Tr. 222)). Claimant believes there is no contradicting evidence to her testimony regarding limitation in use of her dominant hand. (*Id.* at PageID # 1295). The Commissioner clarifies that Claimant's mother's report that Claimant cannot knit or crochet as much as she used to was from October of 2021; whereas the reports ALJ Eastham referenced regarding Claimant's knitting were more recent. (DN 15, at PageID # 1326-27). Because ALJ Eastham resolved conflicts in the evidence as to Claimant's dominant-hand use and ability to knit, the Commissioner maintains the ALJ's analysis was not flawed. (*Id.*).

The Court agrees with the Commissioner. Claimant's mother's third-party report from October 18, 2021 identified that knitting and crocheting were Claimant's hobbies but that she could not knit or crochet "as much as she used to due to her hands." (Tr. 222).  ALJ Eastham cited reports from Plaintiff in February and May 2022 stating "[p]atient is trying to keep occupied with knitting" (Tr. 697) and "[s]he is spending more time 'spinning wool'" (Tr. 706). First, Claimant's mother's observation and Claimant's later reports are not facially contradictory – they both indicate that Claimant is able to knit or crochet to some degree despite some difficulty with her hands. ALJ Eastham evaluated Claimant's mother's third-party report for consistency against Claimant's own reports/testimony, Claimant's daily activities, and the medical evidence of record. (Tr. 22). And Claimant did not "testif[y] without contradiction" regarding her hand impairment, as she alleges. She testified that she cannot crochet for long periods of time because her hand cramps up and she needs to take breaks. (Tr. 54). All of these records indicate that Claimant still retains the ability to

knit or crochet, albeit not as long as she did in the past. ALJ Eastham's RFC limited Claimant to frequent reaching, handling, fingering, and feeling with the bilateral upper extremities. (Tr. 17). Claimant does not prove that additional functional restrictions relating to her alleged hand impairment should have been included in the RFC. The Court, accordingly, finds no error.

Next Claimant criticizes ALJ Eastham's discussion of her mental health treatment notes from March to May of 2022, arguing the records merely "depict a restarting of activity (online gaming)" but that ALJ Eastham does not explain the time and frequency she spent on the activity and does not explain functional capability for the prior twelve-month period. (DN 12, at PageID # 1295 (citing Tr. 22)). In discussing Claimant's online gaming, ALJ Eastham noted the following: in February 2022, she had increased sadness due to online gamers not being able to play but she was hopeful to return to playing online games; in April 2022, she had returned to gaming activities; and in May 2022, she was spending more time playing video games with friends. (Tr. 22). ALJ Eastham discussed her video gaming as one of the social and leisure activities she takes part in despite her allegations regarding the severity of her impairments. Claimant has not demonstrated error from ALJ Eastham's mention of this evidence. Again, it is Claimant's burden, not the ALJ's, to show functional restrictions in her mental functioning.

Claimant briefly states that ALJ Eastham omitted from his ADL evaluation that she does not drive and that her mother accompanies her when she goes shopping once a week. (DN 12, at PageID # 1296). Had ALJ Eastham considered this evidence, Claimant argues he would have determined her daily functions are not comparable to typical work activities. (*Id.*). Beyond these arguments being cursory and undeveloped, Claimant fails to demonstrate how discussion of her not driving and needing her mother to assist her with shopping would support greater functional

limitations in the RFC.[4]

Claimant also states ALJ Eastham did not consider Claimant's service dog when evaluating her ADLs. According to Claimant, ALJ Eastham should have explained how her need for a dog did not limit her ADLs or what limitation this would represent in the workplace. The Commissioner responds that Claimant fails to provide any documentation that a service dog was medically necessary or the impact such an animal would have on her ability to work. (DN 15, at PageID # 1328). Claimant replies that the Commissioner doesn't take into account that ALJ Eastham never mentioned Claimant's service dog anywhere in the decision. (DN 16, at PageID # 1349).

Claimant is correct that ALJ Eastham did not mention her service dog in his decision, but no error stems from this omission. *See Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004) ("An ALJ need not discuss every piece of evidence in the record for [the ALJ's] decision to stand."). Claimant wholly fails to demonstrate her service dog was medically necessary. She does not point to any objective record evidence that the use of a service dog was prescribed. Nor does she explain the impact that a service dog has on her ability to work. The mere mention of a service dog in Claimant's subjective report and her mother's third-party report (Tr. 219, 231) does not suffice to establish medical necessity. *See Ashley D. v. Comm'r of Soc. Sec.*, No. 22-11344, 2023 WL 5266849, at *9-10 (E.D. Mich. July 17, 2023) (finding no error where plaintiff did not point to any evidence in the record of the use of an emotional support dog in her treatment notes or that she ever actually utilized one); *Horne v. Saul*, No. 2:19-cv-013-DCP, 2020 WL 1547068, at *9 (E.D. Mich. July 17, 2023) (finding plaintiff's reference to a letter to his apartment complex that he requires a service animal did not detail that such an animal was medically prescribed or

---

[4] The Court notes that ALJ Eastham's decision limited Claimant to never operating a motor vehicle as a work requirement.

provide an opinion on the impact of a service animal on plaintiff's ability to work).

Claimant's final point in her ADL argument is that ALJ Eastham's discussion of Claimant's anxiety and depression failed to explain how her symptoms of "inability to function with people without the company of a parent, outside her structured environment of home and doctors' offices" permits sustained work. (DN 12, at PageID # 1296). Claimant references that she has panic attacks once a week (Tr. 45), that she can't live alone and has lived with her mother since May 2020 (Tr. 45, 47), that she has a history of multiple suicide attempts including hanging, overdoses, and stabbing, that she has been diagnosed with major depressive disorder and generalized anxiety disorder (Tr. 323, 324, 326), that her psychotropic medications were increased and were helping, that her parents were one of her biggest stressors, that a therapist noted her signs of anxiety, her short attention span, and that she was easily distracted (Tr. 329). These records, according to Claimant, demonstrate substantial evidence does not support ALJ Eastham's characterization of her ADLs. (DN 12, at PageID # 1297).

The Commissioner responds that Claimant fails to present any evidence to rebut the ALJ's finding that her mental status examinations after September 2019 show she was friendly, communicative, relaxed, had a euthymic mood, had normal behavior and an appropriate demeanor. (DN 15, at PageID # 1328-29). Regarding her weekly panic attacks, the Commissioner explains ALJ Eastham considered her testimony that her medication was helping her have less panic and that she was only having anxiety episodes every week or two. (*Id.* (citing Tr. 18)). The Commissioner also argues that Plaintiff living with her mother does not contradict Claimant's ability to participate in the social activities depicted in the decision. (*Id.* at PageID # 1329). The Commissioner emphasizes that Claimant fails to explain what additional functional restrictions should result from the evidence she cites. (*Id.*). Critically, the Commissioner points out that ALJ

Eastham considered the evidence that Claimant relies on in his decision, and this evidence fails to establish that greater functional limitations were warranted. (*Id.*).

No error results from ALJ Eastham not explicitly identifying how Claimant's "inability to function with people without the company of a parent, outside her structured environment of home and doctors' offices" allows for sustained work because, as evidenced by ALJ Eastham's decision, the severity of Claimant's alleged mental symptoms was not fully supported by the record evidence. ALJ Eastham thoroughly considered the medical evidence concerning Claimant's mental impairments, including most of the evidence identified by Claimant now. (Tr. 21). Rather than identifying specific functional limitations resulting from the evidence she identifies, Claimant appears to be asking the Court to reweigh the evidence of her mental impairments and her related activities of daily living. The Court "is not empowered to reweigh the evidence." *Price v. Comm'r of Soc. Sec.*, 342 F. App'x 172, 174 (6th Cir. 2009). Moreover, even though ALJ Eastham found Claimant's symptoms were not as severe as alleged, ALJ Eastham still incorporated functional limitations into his RFC that were supported by the overall record of Claimant's impairments. These include that Claimant can perform simple goal-oriented tasks with simple instructions, can have occasional work-related contact with supervisors and coworkers but none with the public, and can tolerate occasional changes to the workplace setting that are gradually introduced. (Tr. 17).

The Court finds no error in ALJ Eastham's evaluation of Claimant's subjective allegations as to the severity of her symptoms. ALJ Eastham appropriately considered Claimant's activities of daily living, along with Claimant's testimony, the objective medical evidence, Claimant's prescribed treatment and medication, and the frequency of her symptoms. Claimant has failed to demonstrate additional functional limitations would result from the evidence she identifies.

### D. ALJ Eastham's Evaluation of the Medical Opinion Evidence

Claimant also challenges ALJ Eastham's assessments of the medical opinions and prior administrative medical findings in the RFC. (DN 12, at PageID # 1297-99).

In determining a claimant's RFC, defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs," 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c), the ALJ must evaluate the persuasiveness of the medical opinions in the record, 20 C.F.R. §§ 416.945(a)(3), 416.913(a)(2). In this case, the new regulations for evaluating medical opinion evidence apply because Claimant filed her application after March 27, 2017. *See* 20 C.F.R. § 404.1520c. The new regulations specify that an ALJ will not give any specific evidentiary weight to any medical opinion, even the opinions of a claimant's treating physician. *Id.* ALJs now evaluate the "persuasiveness" of medical opinions using five factors: (1) supportability; (2) consistency; (3) relationship to the claimant; (4) specialization; and (5) other factors. *Id.* (c)(1)-(5). Of these factors, supportability and consistency are the most important. *Id.* (a), (b)(2). The regulations, accordingly, require ALJs to explain how they considered the supportability and consistency factors in their determination. *Id.* (b)(2). Comparatively, ALJs "may, but are not required to, explain" their consideration of factors (3)-(5). *Id.*

In assessing a medical opinion's "supportability," "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). And the "consistency" factor denotes the extent to which the medical opinion "is consistent with the evidence from other medical sources and nonmedical sources in the claim[.]" *Id.* (c)(2). To further illuminate this distinction, "supportability" relates to the objective medical

evidence and supporting explanation provided by a medical source to bolster their *own* opinion;
by contrast, "consistency" relates to the relationship of a medical source's opinion to *other* medical
opinions and evidence of record. 20 C.F.R. § 416.920c(c)(1)-(2); *Kenneth B. v. Comm'r of Soc.
Sec.*, No. 3:22-CV-00672-CHL, 2024 WL 1199025, at *6 (W.D. Ky. Mar. 20, 2024).

### 1. Licensed Clinical Social Worker Nikki Abbott's Opinion

Claimant first opposes ALJ Eastham's evaluation of the September 2022 statement
completed by Licensed Clinical Social Worker (LCSW) Nikki Abbott. Ms. Abbott completed an
evaluation titled: "MEDICAL OPINION RE: ABILITY TO DO WORK-RELATED
ACTIVITIES (MENTAL)." (Tr. 1085-86). The evaluation required Ms. Abbott to categorize
Claimant's abilities to perform various mental work-related activities as unlimited or very good,
limited but satisfactory, seriously limited, unable to meet competitive standards, or no useful
ability to function. (*id.*). For unskilled work, Ms. Abbott found none of Claimant's mental abilities
fell into the first three categories. She determined that Claimant was "unable to meet competitive
standards" in four areas: understand and remember very short and simple instructions; sustain an
ordinary routine without special supervision; ask simple questions or request assistance; and be
aware of normal hazards and take appropriate precautions. (Tr. 1085). Ms. Abbott found Claimant
had "no useful ability to function" for unskilled work in the remainder of the listed mental abilities.
(*Id.*). To support her conclusions, Ms. Abbott explained:

> [d]ue to severe anxiety and depression, [Claimant] has panic attacks when under
> stress, has trouble with attention and concentration and could have confusion and
> inability to communicate appropriately with others. Due to autism, [Claimant]
> would not be able to handle changes in routine or have the ability to socially interact
> with others appropriately.

(*Id.*).

Ms. Abbott also found Claimant had "no useful ability to function" in the mental abilities needed for semi-skilled or skilled work, which included understanding and remembering detailed instructions, carrying out detailed instructions, setting realistic goals or making plans independently of others, and dealing with stress of semiskilled and skilled work. (Tr. 1086).  In explanation, Ms. Abbott stated that Claimant

> has problems making decisions and setting goals. She would not be able to adhere to and remember detailed instructions but would feel overwhelmed. This along with the stress of skilled work could cause her to have a panic attack or she may not be able to understand due to autism.

(*Id.*).

Finally, in assessing Claimant's mental abilities and aptitude needed to do particular types of jobs, Ms. Abbott found Claimant would be unable to meet competitive standards for maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness but had no useful ability to function in interacting appropriately with the general public, traveling in unfamiliar places, and using public transportation. (*Id.*). Ms. Abbott explained: "[b]oth autism and anxiety would hinder [Claimant's] ability to interact with the general public and be socially appropriate as well as use public transportation. In a depressive episode, [Claimant] would not be able to be neat and clean." (*Id.*). Ms. Abbott concluded that Claimant's impairments would require her to miss more than four days of work per month. (*Id.*).

ALJ Eastham found Ms. Abbott's statement was not persuasive. (Tr. 22). After discussing Ms. Abbott's findings, ALJ Eastham noted that her narrative statements would support Claimant's limitations as cited. (*Id.*). But ALJ Eastham continued: "the limits are not consistent with other evidence of record including her actual corresponding treating notes and the mental status exams of multiple providers." (*Id.*). ALJ Eastham recognized that the longitudinal record notes occasional abnormal findings, such as depressed or anxious mood and poor insight/judgment, but that when

33

looking at the overall record, the mental status exams were typically within normal limits. (*Id.*). ALJ Eastham concluded he could not find Ms. Abbott's assessment to be persuasive given the discrepancy between treating exams and the limits and rationale provided by Ms. Abbott. (*Id.*).

Claimant's multilayer argument starts by pointing out that the ALJ failed to explain why he rejected Ms. Abbott's limitations as to contact with the general public, including use of public transportation, but then limited Claimant to no public contact in the RFC determination.  (DN 12, at PageID # 1297). The Commissioner submits that ALJs are not required to explain every limitation they do not adopt. (DN 15, at PageID # 1332). Claimant replies that ALJ Eastham's extraction of one function from Ms. Abbott's analysis (no contact with the public) constitutes a medical evaluation or amounts to the ALJ "playing doctor." (DN 16, at PageID # 1350). Citing to *Meece v. Barnhart*, 192 F. App'x 456, 465 (6th Cir. 2006), Claimant seems to argue that ALJ Eastham was substituting his own medical judgment for that of a treating professional by restricting Claimant to no public contact but then permitting contact with her coworkers and supervisors for one-third of the workday. (*Id.*). Per Claimant, ALJ Eastham should have explained this discrepancy in contact limitations. (*Id.*).

Claimant's argument is puzzling. The Court is hard pressed to find that ALJ Eastham "played doctor" by adding an RFC limitation that benefits Claimant, even if he otherwise found Ms. Abbott's opinion was wholly unpersuasive. *See, e.g., Mosed v. Comm'r of Soc. Sec.*, No. 2:14-cv-14357, 2016 WL 6211288, at *7 (E.D. Mich. Jan. 22, 2016) ("Plaintiff's argument that the ALJ erred in assessing a *more restrictive* RFC than that opined by the State agency consultants is curious and unavailing."); *Taylor v. Berryhill*, No. 3:17CV-00200-DW, 2018 WL 344984, at *4 (W.D. Ky. Jan. 9, 2018) ("If anything, ALJ Zuber's decision to afford partial weight to the opinions of Dr. Sadler and Dr. Carter benefitted [plaintiff's] case and, therefore, does not constitute error.").

34

Claimant's argument additionally fails to account for ALJ Eastham's analysis of these limitations when weighing the State agency psychologist opinions. There, ALJ Eastham explained that he was affording slightly greater restriction than the State agency psychologists opined by limiting Claimant to no interaction with the public. (Tr. 23). An ALJ does not inappropriately substitute his judgment for a physician's opinion by providing a restrictive RFC than what a State agency physician opined. *See Laney v. Comm'r of Soc. Sec.*, No. 5:21-CV-01290-CEH, 2022 WL 2176539, at *7 (N.D. Ohio June 16, 2022).

As for Claimant wanting a similar restriction on contact with coworkers and supervisors, Claimant has not demonstrated that the evidence warrants such a restriction. Moreover, the Commissioner is correct that an ALJ need not discuss his decision not to adopt every limitation from an opinion. *Tyrian C. v. Kijakazi*, No. 3:21-CV-00568-RGJ, 2023 WL 310179, at *7 (W.D. Ky. Jan. 3, 2023) ("there is no requirement that an ALJ discuss each limitation from an opinion that he adopts, or fails to adopt, when he has rejected or adopted the opinion on broader grounds") (citing *Williams v. Comm'r of Soc. Sec.*, No. 1:20-cv-11567, 2021 WL 3524115, at *5 (E.D. Mich. June 23, 2021); *Reusel v. Comm'r of Soc. Sec.*, No. 5:20-cv-1291, 2021 WL 1697919, at *8 (N.D. Ohio Apr. 29, 2021)).

Next, Claimant asserts that record evidence of her continuing anxiety and apprehension in 2022, including continued avoidance of situations, corroborates Ms. Abbott's limitations related to changes in routine and stress. (*Id.* (citing Tr. 531, 706, 707)). These records do not support Ms. Abbott's limitations. In February 2022, Claimant reported her symptoms were improving, were less frequent and less intense, and that she was avoiding certain situations less. (Tr. 531). Though Claimant noted her symptoms of depression had worsened, her depressive moods were episodic, occurring a few times a week. (*Id.*). On objective exam, Claimant was found to be euthymic with

no signs of depression or anxiety, denial of suicidal ideation, no signs of psychotic process, associations intact, thinking generally logical, appropriate thought content, cognitive functioning commensurate with her age and abilities, and intact and normal insight and judgment. (*Id.*). Her treatment plan included medication and therapy. (Tr. 531-32).

In May 2022, Claimant also appeared euthymic, denied any worsening symptoms of depression, and denied any thoughts of self harm or suicide ideation. (Tr. 706). Claimant stated that although she continues to avoid certain situations that evoke anxiety, her anxiety symptoms have improved in that they are less frequent or less intense. (Tr. 707). On exam, Claimant was found to have no apparent serious mental status abnormalities. (*Id.*). Of note, Claimant had neither depression nor elevated mood, appropriate behavior, associations intact, logical thinking, no signs of cognitive difficulties, and intact insight and judgment. (*Id.*). Claimant was instructed to continue daily medication and therapy on a regular basis. (Tr. 707-08).

Nothing in the February and May 2022 records corroborates Ms. Abbott's extreme findings that Claimant had no useful ability to function in responding to changes in a routine work setting and dealing with normal stress. In fact, these records contradict Ms. Abbott's explanation for her extreme limitations, that Claimant has difficulty with attention and concentration due to severe anxiety and depression, and an inability to handle routine changes due to autism. As discussed above, Claimant repeatedly presented with no signs of depression and anxiety and normal behavior.[5]

---

[5] Later, Claimant again references the February 2022 records, arguing that her symptoms are episodically present, which she believes contradicts ALJ Eastham's generalization of office visits with normal findings. Claimant asserts ALJ Eastham failed to present a reasoning for why the episodic nature of her symptoms did not prevent sustained work. (DN 12, at PageID # 1298). The Commissioner argues Claimant's argument is her own interpretation of the record evidence, which does not warrant remand. (DN 15, at PageID # 1335). And the mental status findings from February of 2022, the Commissioner points out, do not corroborate the limitations in Ms. Abbott's opinion. (*Id.*). Claimant does not demonstrate that additional functional limitations are necessary based on her episodic symptoms. Claimant is once more attempting to shift the burden of proving disability to ALJ Eastham. This repetitive claim is meritless.

Claimant next argues ALJ Eastham failed to explain why he was not adopting Ms. Abbott's limitations on working in coordination and proximity with others, getting along with peers without undue distraction, and exhibiting behavioral extremes since these limitations bear the same support as the adopted limitation on excluding public contact. (DN 12, at PageID # 1297). ALJ Eastham concluded Ms. Abbott's opinion, on the whole, was not persuasive because her opined limitations contradicted the objective medical records. Once more, ALJs are not required to explain how they have considered every specific limitation in an opinion. *See Tyrian C. v. Kijakazi*, 2023 WL 310179, at * 7. ALJ Eastham did not err in explaining why he rejected the listed limitations after determining Ms. Abbott's opinion was wholly unpersuasive. His decision to adopt one limitation mentioned in her opinion does not necessarily prove that these additional limitations were warranted. The limitations ALJ Eastham ultimately adopted, that claimant can "have occasional work-related contact with supervisors and coworkers," reflects that he considered and limited Claimant's ability to work in coordination and proximity with others and get along with peers without causing undue distraction. Claimant does not prove that further limitation in these areas is warranted by the record.

In a more general argument, Claimant asserts ALJ Eastham failed to cite any evidence that contradicted Ms. Abbott's limitations. This is incorrect. ALJ Eastham stated Ms. Abbott's limitations were not consistent with the mental status exams that were "typically within normal limits as described herein." The phrase "as described herein" logically refers to the paragraph earlier in ALJ Eastham's RFC where he thoroughly discussed treatment records concerning Claimant's mental impairments. (Tr. 21). There, ALJ Eastham recognized that Claimant has a history of depression and anxiety, with panic attacks, is prescribed medication and has participated in therapy, and that mental status examinations after September 2019 generally found her mental

impairments to be within normal limits. (*Id.*). These records are inconsistent with Ms. Abbott's fully disabling limitations.

Claimant finally attempts to discredit ALJ Eastham's evaluation of Ms. Abbott's statement by arguing he did not articulate any of the required factors of 20 C.F.R. §§ 404.1520c(b)(c).  (DN 12, at PageID # 1298). According to Claimant, ALJ Eastham merely produced generalizations and conclusions without citations to the record that a reviewer could follow. The Court disagrees. ALJ Eastham explicitly considered both the supportability and consistency factors, as required by 20 C.F.R. §§ 404.1520c(a). Addressing supportability, ALJ Eastham determined that the narrative explanations in Ms. Abbott's statement supported her opined limitations but that her actual corresponding treatment notes did not support such limitations. (Tr. 22). Addressing consistency, ALJ Eastham found the mental status exams of multiple medical providers were not consistent with Ms. Abbott's limitations and that "looking at the overall record, the mental status exams are typically within normal limits as described herein." (*Id.*). Again, "as described herein" refers to ALJ Eastham's thorough discussion on the mental medical evidence earlier in the RFC.

While ALJ Eastham could have provided more detail regarding how Ms. Abbott's opined limitations were inconsistent with her corresponding treatment notes, Claimant does not demonstrate ALJ Eastham's analysis was insufficient or incorrect. And "meaningful judicial review exists – even if the ALJ provided only a cursory or sparse analysis – if the ALJ made sufficient findings elsewhere in the decision that support her conclusion." *Ebony S. v. Comm'r of Soc. Sec.*, No. 2:23-cv-1043, 2023 WL 7401227, at *7 (S.D. Ohio Nov. 9, 2023) (quoting *Booker R. v. Comm'r of Soc. Sec.*, No. 3:22-cv-170 2023 WL 4247312, at *4-5 (S.D. Ohio June 29, 2023) (construing supportability analysis from ALJ's comparison of medical opinion with "the physician's own findings and explanations"). Review of Ms. Abbott's treatment records reveals

Claimant making progress in her short-term goals and interventions. (Tr. 521-29). Though Claimant reported symptoms of depression to Ms. Abbott, including feeling sad, empty, and lonely numerous times a day that interferes with her daily functioning, Ms. Abbott found Claimant had strengths, such as being intellectually bright, having a good relationship with her family, having friends, being artistic (crocheting and baking), and being motivated for treatment. (*Id.*). These objective findings align with ALJ Eastham's RFC analysis and restrictions.

### 2. State Agency Physicians' Opinions

ALJ Eastham found the State agency physical assessments were not persuasive. (Tr. 22-23). This assessment, ALJ Eastham explained, was not well supported because it "appears to rely heavily on the claimant's subjective allegations of loss of consciousness with stress and physical activity as opposed to the actual objective findings." (Tr. 22). ALJ Eastham additionally found the State agency physicians' opined levels of limitation were not consistent with other evidence of record, "including treating notes demonstrating routine treatment is generally effective in controlling her symptoms." (Tr. 22-23). While recognizing that Claimant's POTS was medically determinable, ALJ Eastham concluded the record did not demonstrate that Claimant's POTS results in the exertional limits assessed by the State agency. (Tr. 23).

ALJ Eastham's analysis of the State agency medical opinions, Claimant argues, is inaccurate based on the tilt table test and Holter monitor, which both support a diagnosis of POTS. (DN 12, at PageID # 1299). Claimant reiterates her earlier argument that treating physicians have documented her syncopal and presyncopal symptoms. Claimant further argues the State agency physicians did not consider the vocational significance of her continuing dizziness and lightheadedness with need for a walker. (*Id.*). The State agency physicians, according to Claimant, did not adhere to the regulatory requirements for showing supportability and consistency with the

record as a whole. (*Id.*).

The Commissioner responds that ALJ Eastham appropriately evaluated and discounted the State agency medical opinions not only because they relied heavily on Claimant's subjective complaints but also because their findings were inconsistent with the objective medical record. (DN 15, at PageID # 1336-37). The Commissioner clarifies that a diagnosis of POTS does not automatically warrant corresponding functional limitations. (*Id.*). As for Claimant's allegations that the State agency physicians did not consider the vocational significance of her lightheadedness, dizziness, and need for a walker, the Commissioner clarifies that the job of State agency physicians is to provide medical assessments of Claimant's functioning. (*Id.*). The job of considering vocational impacts of a claimant's RFC falls to ALJs and vocational experts, the Commissioner explains. (*Id.*).

As an initial matter, Claimant's argument that the State agency physicians did not appropriately show supportability and consistency with the record as a whole is misguided. Claimant seems to take issue with their assessments, rather than with ALJ Eastham's evaluation of the assessments. The Court's review is limited to determining whether the ALJ's decision is supported by substantial evidence and employed the proper legal standards. 42 U.S.C. § 405(g). To the extent that Claimant asks the Court to review the State agency physicians' assessments, such request goes beyond the statutory scope of review.

Even if Claimant meant to argue that ALJ Eastham failed to evaluate the supportability and consistency of the State agency physicians' opinions, as required by the regulations, her argument still fails. ALJ Eastham explicitly considered the consistency of the assessments, finding they were inconsistent with other evidence of record, including treating notes demonstrating that routine treatment was generally effective in controlling her physical symptoms. (Tr. 22-23). ALJ Eastham

also referenced the "supportability" of the assessment, noting it heavily relied on Claimant's subjective allegations versus actual objective findings.[6] (*Id.*). Claimant fails to demonstrate this analysis was insufficient or did not permit meaningful judicial review.

Nor does Claimant's reference to the tilt table test and Holter monitor testing and diagnosis of POTS demonstrate that ALJ Eastham erred in evaluating the State agency physician opinions. "[M]ere diagnosis does not necessarily result in functional limitations." *Bobb v. Comm'r of Soc. Sec.*, No. 2:19-cv-5612, 2021 WL 716878, at *2 (S.D. Ohio Feb. 24, 2021) (citing *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis . . . of course, says nothing about the severity of the condition.")). ALJ Eastham's RFC analysis previously acknowledged Claimant's tilt table test and Holter monitor testing and thoroughly discussed Claimant's POTS episodes and how they have improved with Florinef therapy. ALJ Eastham did not err by not further acknowledging Claimant's reported dizziness, lightheadedness, and need for a walker in evaluating the persuasiveness of the State agency physicians' opinions.

### 3. State Agency Psychologists' Opinions

ALJ Eastham found the State agency psychologists' opinions were persuasive but ultimately afforded Claimant slightly greater restrictions, including limiting Claimant to simple tasks and no interaction with the public. (Tr. 23). ALJ Eastham determined the State agency psychologists' limitations were "well supported by the findings cited including the normal mental status exams in the treating record and the efficacy of medication." (*Id.*). As for consistency, ALJ Eastham found the assessment was "consistent with the other evidence of record including the

---

[6] The Court notes that the opinions of State agency consultants are uniquely situated in terms of an ALJ's ability to conduct both a supportability and consistency analysis since State agency consultants do not examine claimants, meaning there is not objective diagnostic testing or observation from the reviewers from which an ALJ can assess supportability. *See, e.g., Kenneth B. v. Comm'r of Soc. Sec.*, No. 3:22-CV-00672-CHL, 2024 WL 1199025, at *6-7 (W.D. Ky. Mar. 20, 2024); *Tyrone H. v. Comm'r of Soc. Sec.*, No. 2:22cv-3652, 2023 WL 2623571, at *6-7 (S.D. Ohio Mar. 24, 2023).

routine treatment received and the longitudinal mental status exams across multiple providers." (*Id.*).

In one sentence, Claimant argues the State agency psychological consultants "failed to rationalize the episodic nature of her depression and anxiety symptoms" and failed to evaluate the combined effect of POTS and depression/anxiety. (DN 12, at PageID # 1299). Claimant's argument once more exceeds the Court's statutory scope of review by challenging how the State agency psychologists rendered their assessments rather than the ALJ's evaluation of such assessments. Otherwise, Claimant's argument is undeveloped and does not warrant further consideration. *See McPherson*, 125 F.3d at 995-96 (6th Cir. 1997).

### E. ALJ Eastham's Evaluation of Claimant's Mother's Third-Party Report

As referenced several times in this Report and Recommendation, Claimant's mother provided a third-party function report on Claimant's conditions in October 2021. (Tr. 217-224). ALJ Eastham found Claimant's mother's report supported Claimant and her allegations but was not persuaded that her mother's observations and opinions warranted a more restrictive RFC, in light of Claimant's own representations and descriptions of her problems, activities of daily living, and work history, or when weighed for consistency with all the other evidence. (Tr. 23). ALJ Eastham noted the report was not analyzed for persuasiveness as it is not a medical opinion. (*Id.*).

Claimant states that ALJ Eastham found her mother's report supportive and details some of her mother's statements, including that Claimant uses a walker, faints, uses a service dog, needs reminders, helps with housework, has problems with her hands, gets overwhelmed almost daily in conversations, can be socially inept and cannot handle crowds, can pass out if standing, squatting, bending, or kneeling, and has panic attacks when stressed. (DN 12, at PageID # 1300 (citing Tr. 217-224)). Claimant then asserts her mother's report is both consistent with and supported by the

record as a whole and "constitutes other evidence of [her] symptoms." (DN 12, at PageID # 1300).

The Commissioner notes that Claimant mischaracterizes the ALJ's finding. (DN 15, at PageID # 1338). The Court agrees. ALJ Eastham found that Claimant's mother's report supported the Claimant and her allegations but not that the report was supported by the overall evidence of record. Though Claimant broadly attempts to undercut the ALJ's analysis by stating her mother's report is "consistent with and supported by the record," she makes no developed effort to cite to evidence rebutting the ALJ's conclusions. The Court finds no error in the ALJ's evaluation of Claimant's mother's report.

## IV. Recommendation

ALJ Eastham's decision is supported by substantial evidence in the record and comports with the applicable regulations; accordingly, the Court **RECOMMENDS** the Commissioner's decision be **AFFIRMED**.

## NOTICE

Therefore, under the provisions of 28 U.S.C. " 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir.), *aff'd*, 474 U.S. 140 (1984).

Copies:         Counsel of Record