UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| ALISHA B., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:23-CV-495-CHB |
| | ) | |
| v. | ) | |
| | ) | |
| MARTIN O'MALLEY, *Commissioner of Social Security*, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Magistrate Judge Regina S. Edwards's Report and Recommendation ("Recommendation") [R. 18] and Claimant Alisha B.'s objections thereto [R. 19]. The Commissioner responded, noting that Claimant's objections "focus on errors in the ALJ's decision and not in the Magistrate Judge's Report and Recommendation" and urging the Court to adopt Magistrate Judge Edwards's Recommendation. [R. 20]. For the reasons that follow, the Court will adopt the Recommendation and affirm the final decision of the Commissioner.

## I.      Background

On September 23, 2021, Claimant Alisha B. protectively filed an application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1382c(a)(3) (the "Act"), and on the same day, an application for Child Insurance benefits under § 202(d) of the Act. [R. 10 (Administrative Record) (hereinafter "Administrative Transcript" or "Tr."), p. 10]. She alleges disability beginning on July 3, 2008, due to postural orthostatic tachycardia syndrome ("POTS"), her heart stopping randomly, celiac disease, gastroparesis disease, clinical depression, borderline personality disorder, generalized anxiety

disorder, autism, attention deficit disorder, and polycystic ovarian syndrome. *Id.* at 209.

Claimant's application was denied initially and upon reconsideration. *Id.* at 1–6, 7–30, 66–95. At Claimant's request, a hearing was held September 29, 2022 before Administrative Law Judge Jeffrey Eastham ("ALJ Eastham"). *Id.* at 10. With Claimant's consent, the hearing was held by telephone due to the Coronavirus pandemic. *Id.* ALJ Eastham issued an unfavorable decision on October 11, 2022. *Id.* at 10–25.

In making his determination, ALJ Eastham applied the traditional five-step sequential analysis promulgated by the Commissioner for evaluating a disability claim. 20 C.F.R. § 404.1520; *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010) In summary, the evaluation process proceeds as follows:

1. Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

2. Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

3. Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

4. Does the claimant have the RFC to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

5. Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The claimant bears the burden of proof with respect to steps one through four. *Walters v.*

*Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The claimant always retains the burden of proving lack of RFC. *Jordan*, 548 F.3d at 423; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

First, ALJ Eastham found Claimant did not engage in substantial gainful activity at any point since July 3, 2008, Claimant's alleged onset date. [Tr. 12]. Second, he found Claimant has the severe impairments of migraine headaches, POTS, irritable bowel disease, depression, and anxiety. *Id.* at 13. Third, ALJ Eastham found that none of Claimant's impairments or combination of impairments meet or medically equal the severity of a listed impairment under 20 C.F.R. Pt. 404, Subpt. P, App'x 1. *Id.* at 15. ALJ Eastham then determined Claimant has the residual functional capacity ("RFC") to perform "light work" as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b), with the following limitations:

> [She] can frequently reach, handle, finger, and feel with the bilateral upper extremities; can occasionally climb ramps but never climb stairs, ladders, ropes, or scaffolding; frequently balance (as defined by the SCO); frequently stoop; occasionally crouch and kneel but never crawl; avoid frequent concentrated exposure to extreme temperatures, vibrations, pulmonary irritants; never to work at unprotected heights; never to work with dangerous machinery; never to operate motorized vehicles as a work requirement; no fast paced production rate work such as the rate associated with hourly quotas or conveyor belt paced work; work environment must be no louder than a moderate noise level. The claimant can perform simple goal oriented tasks with simple instructions; can have occasional work related contact with supervisors and coworkers but none with the public; can tolerate occasional changes to the workplace setting that are gradually introduced.

*Id.* at 17. Fourth, ALJ Eastham found Claimant has no past relevant work. *Id.* at 23. Fifth and finally, considering Claimant's age, education, work experience, and RFC, ALJ Eastham determined there are jobs that exist in significant numbers in the national economy that Claimant can perform. *Id.* at 24.

Based on this evaluation, ALJ Eastham concluded that Claimant was not disabled, as defined in the Social Security Act, at any point since her alleged onset date through the date of the decision. *Id.* at 25. Claimant sought administrative review of the decision, and the Appeals Council declined review on August 7, 2023. *Id.* at 1. At that point, ALJ Eastham's decision became the final decision of the Commissioner, and Claimant sought judicial review from this Court on September 20, 2023. [R. 1].

## II.   Standard of Review

When a party timely objects, the Court reviews *de novo* only those portions of a Report and Recommendation to which an objection is made. 28 U.S.C. § 636(b)(1)(C). The Court may adopt without review any portion of the report to which no objection is made. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). On review, the Court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). Accordingly, the Court will review *de novo* the portions of Magistrate Judge Edwards's Recommendation to which Claimant properly objects.

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Colvin v. Barnhart*, 475 F.3d 727, 729–30 (6th Cir. 2007). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, the Court must "affirm the Commissioner's conclusions unless the Commissioner failed to apply the correct legal standard or made findings of fact that are unsupported by substantial evidence." *McClanahan v. Comm'r of*

*Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).

### III.   Analysis

Claimant raises challenges to several findings in ALJ Eastham's decision. First, she alleges ALJ Eastham erred in not evaluating whether she met or medically equaled Listing 4.05. [R. 19, pp. 1–8]. Next, Claimant argues that ALJ Eastham failed to adequately explain how her symptoms could allow for his residual functional capacity ("RFC") determination; moreover, she argues that he improperly evaluated the need for a hand-held assistive device. *Id.* at 8–12. Then, Claimant suggests that ALJ Eastham failed to properly address the medical evidence of record and subjective complaints in determining her residual functional capacity. *Id.* at 12–20. Claimant also alleges that ALJ Eastham erred in not properly evaluating the mother's third-party report. *Id.* at 20. Finally, Claimant argues that the ALJ erred in not asking the Vocational Expert about some of her symptoms. *Id.* at 20–21. In response, the Commissioner argues that most of these objections are impermissible, since many of them were raised before the Report and Recommendation or constitute new objections. [R. 20, pp. 1–2]. The Commissioner responds that, in any event, there is substantial evidence to support the ALJ's findings at each step. *Id.* at 2–17.

### A.  Claimant's Step 3 Objections

Claimant challenges ALJ Eastham's finding at step three of the five-step evaluation process that Claimant does not meet a Listing. [R. 19, pp. 1–8]. At step three, the ALJ considers whether the claimant has an impairment that satisfies the criteria set forth in 20 C.F.R. Pt. 404, Subpart P, Appendix 1, which are generally referred to as the "Listings." 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). A claimant's impairment satisfies a Listing only when the claimant manifests the specific requirements described in the Listing's medical criteria. 20 C.F.R. §§ 404.1525(d), 416.925(d) (2021). An impairment must satisfy all criteria of a Listing to "meet" Listing-level; a

diagnosis alone is insufficient, and satisfaction of only some criteria is likewise insufficient. 20 C.F.R. § 416.925(d); *see also Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 728 (6th Cir. 2004) ("When a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency."). An impairment may also qualify as disabling if it "medically equals" a listed impairment, meaning it is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a). The claimant bears the burden of proving his or her impairment satisfies all the specified criteria in a given Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Because a claimant who meets the requirements of a listed impairment at step three will be deemed conclusively disabled and entitled to benefits, the burden on the claimant is high. *See Robinson v. Comm'r of Soc. Sec.*, 426 F. Supp. 3d 411, 421 (E.D. Mich. 2019); *see also Sullivan v. Zebley*, 493 U.S. 521, 530–31 (1990).

The standard that the Court must use in determining whether an ALJ should have evaluated whether a claimant meets or medically equals a particular Listing is "whether the record evidence raises a substantial question as to [a claimant's] ability to satisfy each requirement of the [L]isting." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 433 (6th Cir. 2014). This standard "does not require the ALJ to address every listing" when it is clear that the claimant does not meet a Listing. *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 642 (6th Cir. 2013). Instead, under this standard, a claimant "must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing." *Smith-Johnson*, 579 F. App'x at 432. Because it is Claimant's burden to show that the ALJ erred in not considering the Listing, a Claimant must do more than point to "a mere toehold in the record on an essential element of the listing." *Sheeks*,

544 F. App'x at 642 (finding that a claimant "must show that the open question is a *substantial*

one that justifies a remand" (citing *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990))). If, upon

the Court's review, there is no substantial question as to whether a claimant meets the Listing, then

the Court will not find that the ALJ erred in not discussing the Listing. *Id.* at 641.

### i.   Meeting the Listing

Here, even though no Listing directly addressed POTS, ALJ Eastham considered whether

Claimant's impairment met or medically equaled the requirements under Listings 11.00 and 11.02,

since he determined that Claimant's symptoms were most like the Listing concerning epilepsy.

[Tr. 15–17]. ALJ Eastham found that

> the evidence does not establish the claimant has met Listing 11.02 for Epilepsy
> because there is no evidence for tonic-clonic or dyscognitive seizures occurring at
> the requisite intervals despite adherence to prescribed treatment, and no evidence
> for marked limitations in physical functioning, understanding, remembering, or
> applying information, interacting with others, concentrating, persisting, or
> maintaining pace, or adapting and managing oneself.

*Id.*

Claimant argues that the ALJ should have considered Listing 4.05 for Recurrent

Arrythmias. [R. 19, pp. 1–8]. Moreover, Claimant argues that both the Magistrate Judge and the

ALJ failed to "define the frequency and intensity" of Claimant's symptoms of lightheadedness and

dizziness, and, if defined correctly, this would show that she meets the Listing 4.05. *Id.* at 3.

The Listings under 4.00 include "any disorder that affects the proper functioning of the

heart or the circulatory system (that is, arteries, veins, capillaries, and the lymphatic drainage). The

disorder can be congenital or acquired." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, Listing

4.00(A)(1)(a). Listing 4.05 includes:

> Recurrent arrhythmias, not related to reversible causes, such as electrolyte
> abnormalities or digitalis glycoside or antiarrhythmic drug toxicity, resulting in
> uncontrolled, recurrent episodes of cardiac syncope or near syncope, despite

prescribed treatment, and documented by resting or ambulatory (Holter) electrocardiography, or by other appropriate medically acceptable testing, coincident with the occurrence of syncope or near syncope.

*Id.* at Listing 4.05 (internal citations omitted).

The Magistrate Judge found that the "evidence does not raise a substantial question as to whether Claimant can meet the criteria in Listing 4.05." [R. 19, p. 10]. First, the Magistrate Judge found that Claimant's symptoms of dizziness and lightheadedness did not meet the Listing as "syncope or near syncope." *Id.* Under Listing 4.00(F)(3)(b), syncope or near syncope is defined as "a period of altered consciousness, since syncope is a loss of consciousness or a faint. It is not merely a feeling of light-headedness, momentary weakness, or dizziness." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, Listing 4.00(F)(3)(b). Periods of dizziness and lightheadedness, the Magistrate Judge further elaborated, "do not equate to altered consciousness under the regulations." [R. 18, p. 10]. And even if her symptoms did, from October 2018 on, constitute altered consciousness in certain instances, her symptoms responded to Florinef treatment under Dr. Valayam's care, and the Magistrate Judge found that evidence to be supportive of her symptoms being "controlled." *Id.* at 10–11. Further, because the walker was requested by the claimant, it was not considered by the Magistrate Judge to be evidence that the "presyncopal episodes rose to the level required to establish near syncope under the Listing." *Id.*

Second, the Magistrate Judge explained that to meet Listing 4.00, Claimant must have an "uncontrolled impairment" that "does not adequately respond to standard prescribed medical treatment. Medical treatment for the impairment, accordingly, is a requirement of meeting the [L]isting." *Id.* at 11. During June 2018 and August 2018, two periods of time Claimant claims that should be included as evidence that her symptoms were "uncontrolled," the Magistrate found that Claimant was not prescribed any medical treatment for symptoms of syncope or near syncope. *Id.*

8

at 10–11. Therefore, symptoms that occurred during those periods could not be considered "uncontrolled" as there was no evidence to show that Claimant was prescribed any treatment for her symptoms.

Finally, the Magistrate Judge found that the claimant had failed to connect her syncopal episodes to recurrent arrythmias. Instead, the Magistrate Judge pointed to Dr. Mouser's August 7, 2018 report, which stated that "Claimant's Holter monitor 'showed frequent PVCs with no arrythmias.'" [R. 18, p. 11]; [Tr. 313]. For all of these reasons, the Magistrate Judge found that Claimant had not raised a substantial question as to whether she could meet Listing 4.05.

The Magistrate Judge correctly determined that the ALJ did not err in not evaluating Listing 4.05. Under Listing 4.05,

> there must be a documented association between the syncope or near syncope and the recurrent arrhythmia. The recurrent arrhythmia, not some other cardiac or non-cardiac disorder, must be established as the cause of the associated symptom. This documentation of the association between the symptoms and the arrhythmia may come from the usual diagnostic methods, including Holter monitoring (also called ambulatory electrocardiography) and tilt-table testing with a concurrent ECG.

20 C.F.R. Pt. 404, Subpt. P, App'x 1, Listing 4.00(F)(3)(c). Claimant points to the results of her Holter monitoring and tilt-table testing. But, just as the Magistrate Judge determined, the medical evidence showed no link between Claimant's lightheadedness and dizziness and recurrent arrythmias; in fact, it showed the opposite. While Claimant cites other medical reports in the record to support the occurrence of lightheadedness and dizziness, this evidence does not link these symptoms to recurrent arrhythmias and is not sufficient to meet the Listing. *Id.* at Listing 4.00(F)(3)(b) (stating that "[m]erely a feeling of light-headedness, momentary weakness, or dizziness" will not suffice to prove syncope or near syncope).

Here, just as the Magistrate Judge found, there is no substantial question as to whether Claimant can meet Listing 4.05 because Claimant does not meet or equal every requirement under

the Listing. *See Sullivan v. Zembley*, 493 U.S. 521, 530 (1990) ("An impairment that manifests only some of those criteria, no matter how severely, does not qualify."). Therefore, because there was no substantial question raised, ALJ Eastham was not required to discuss Listing 4.05 and did not err. *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 642 (6th Cir. 2013).

In addition, Claimant argues the Magistrate Judge and the ALJ failed to state the "frequency and intensity" of her lightheadedness and dizziness as required by Listing 4.05. Claimant does not cite to the Listing; instead, Claimant states that "[t]he determinative issue for the Listing (and vocationally) is frequency and intensity." [R. 19, p. 3]. Contrary to Claimant's view, the ALJ did make this finding: "[o]verall, the record does not support the claimant's allegations regarding the intensity and frequency of POTS related episodes or migraine headaches." [Tr. 18]. An ALJ "is not required to cite or discuss every factor used to evaluate the consistency of a plaintiff's description of symptoms with the record evidence." *Karen F. v. Comm'r of Soc. Sec.*, No. 2:22-cv-2951, 2023 WL 3740784, at *4 (S.D. Ohio May 31, 2023) (citing *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009)). Evidence of an ALJ's consideration of health records may be found at other steps of his decision. In other words, a court may look to other steps in an ALJ's evaluation to determine whether he considered the medical evidence. *See Bledsoe v. Barnhart*, 165 Fed. App'x 408, 411 (6th Cir. 2006) ("The ALJ did not err by not spelling out every consideration that went into the step three determination. The language of 20 C.F.R. § 404.1526 does not state that the ALJ must articulate, at length, the analysis of the medical equivalency issue. It states that the ALJ should review all evidence of impairments to see if the sum of impairments is medically equivalent to a 'listed impairment.'"). Here, as the Magistrate Judge determined, "[ALJ Eastham's] step-three analysis makes clear that he considered Claimant's POTS and anxiety in combination because he evaluated Claimant's POTS under

Listing 11.02, which requires proof of market limitations in several domains identical to those required for mental impairments under Listings 12.04 and 12.06." [R. 18, p. 13]. Further, "[e]ven though ALJ Eastham did not discuss Listing 4.05 in his step-three analysis, he exhaustively considered the evidence Claimant relies on in evaluating Claimant's RFC at step four." *Id.* ALJ Eastham considered Claimant's symptoms and determined that the "intensity and frequency" of those symptoms were not fully consistent with the medical evidence. The ALJ did not err in not describing those symptoms further. [Tr. 18].

### ii.  Medically Equaling the Listing

The claimant next argues that the ALJ erred in not finding that Claimant's symptoms medically equaled a Listing and that the ALJ did not "actually evaluate[ ] the evidence, compare[ ] it to the relevant listed impairment[,] and g[i]ve an explained conclusion that allows a meaningful judicial review." [R. 19, p. 8].

An ALJ will find that an impairment is "medically equivalent to a listed impairment . . . if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a) (2021). Medical equivalence can be found in one of three ways:

(1) (i) If [the claimant has] an impairment that is described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter, but —
    A   [the claimant does] not exhibit one or more of the findings specified in the particular listing, or
    B   (B) [the claimant] exhibit[s] all of the findings, but one or more of the findings is not as severe as specified in the particular listing,
(ii) [The ALJ] will find that [the claimant's] impairment is medically equivalent to that listing if [the claimant has] other findings related to [the claimant's] impairment that are at least of equal medical significance to the required criteria.
(2) If [the claimant has] an impairment(s) that is not described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter, [the ALJ] will compare [the claimant's] findings with those for closely analogous listed impairments. If the findings related to [the claimant's] impairment(s) are at least of equal medical significance to those of a listed impairment, [the ALJ] will find that

> [the claimant's] impairment(s) is medically equivalent to the analogous listing.
>
> (3) If [the claimant has] a combination of impairments, no one of which meets a listing described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter (see § 416.925(c)(3)), [the ALJ] will compare [the claimant's] findings with those for closely analogous listed impairments. If findings related to [the claimant's] impairments are at least of equal medical significance to those of a listed impairment, [the ALJ] will find that [the claimant's] combination of impairments is medically equivalent to that listing.

20 C.F.R. §§ 404.1526(b), 416.926(b); Social Security Ruling ("SSR") 17-2p, 2017 WL 3928306, at *3–4 (Mar. 27, 2017) (summary of the three ways the Social Security Administration can find medical equivalence).

The Magistrate Judge addressed this argument, finding that "Claimant does not demonstrate how she medically equals the criteria she cannot outright meet." [R. 18, p. 12]. Claimant could not, and still has not, put forward evidence that she meets the criteria of recurrent arrythmias, as required under Listing 4.05. Claimant claims that the Holter test results and tilt test results, along with the labeling of her symptoms as "significant" by two treating physicians, are objective medical evidence that her impairment medically equals Listing 4.05. [R. 19, 7–8]. But, as the Magistrate Judge determined, she has not pointed to evidence proving the "criteria she cannot exhibit, namely having recurrent arrythmias and uncontrolled episodes." [R. 18, pp. 12–13]. The ALJ was not required to evaluate any "underlying condition" because Claimant put forward no evidence of having arrythmias. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, Listing 4.00(F)(3)(a).

Here, contrary to Claimant's contention that ALJ Eastham did not "actually evaluate[] the evidence" and "compare[] to the relevant listed impairment," [R. 19, p. 8], at step three, ALJ Eastham specifically found that Claimant's impairments did not "meet[ ] or medically equal[ ]" the Listings. [Tr. 15]. ALJ Eastham compared Claimant's allegations with the medical evidence bearing on the severity of her impairment. Based on the record, ALJ Eastham considered

12

Claimant's POTS symptoms by analyzing them under Listing 11.00 and Listing 11.02, *id.* at 15, but he ultimately determined that "[o]verall, the record does not support the claimant's allegations regarding the intensity and frequency of POTS related episodes or migraine headaches." *Id.* at 19. He also detailed Claimant's symptoms in his RFC analysis. *Id.* at 17–23. These portions of ALJ Eastham's respective step three and RFC analyses sufficiently demonstrate that he considered the question of medical equivalence. *See* SSR 17-2p, at *4 (providing that "a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding" and that an ALJ's "articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3"). *See also Davis v. Comm'r of Soc. Sec.*, No. 18-13576, 2019 WL 6208732, at *6 (E.D. Mich. Oct. 31, 2019), report and recommendation adopted, No. 18-13576, 2019 WL 6173802 (E.D. Mich. Nov. 20, 2019) ("[U]nder SSR 17-2p, the court must look at the ALJ's step three discussion as well as later portions of the decision to determine the basis for the step three finding."). Moreover, as is discussed below, ALJ Eastham's findings in his RFC analysis support his conclusion that Claimant does not meet or medically equal the Listing.

Finally, Claimant objects to the Magistrate Judge's finding that she did not meet or medically equal Listing 4.05 for a period of twelve months. [R. 19, 7–8]. As described, the Magistrate Judge did not find that Claimant met the Listing at any point, and neither did the ALJ. The Court agrees that the ALJ and Magistrate Judge did not err in finding that Claimant did not meet or medically equal Listing 4.05.

## B. Residual Functional Capacity

As a threshold matter, Claimant's RFC objections do little more than restate the objections

filed against the ALJ's decision before the Report and Recommendation. Nevertheless, the Court finds that there is not substantial evidence to show that the ALJ erred in Claimant's RFC evaluation.

An ALJ's RFC finding is the ALJ's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 404.1546(c), 416.945(a)(1), 416.946(c). The ALJ bases his or her determination on all relevant evidence in the case record, including statements from medical sources. 20 C.F.R. §§ 404.1529, 416.929, 404.1545(a)(1)–(4). Thus, in making his or her determination of a claimant's RFC, an ALJ must necessarily evaluate the medical opinions in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1527, 416.927, 404.1529(a), 416.929(a).

The claimant bears the burden of proof with respect this step. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The claimant always retains the burden of proving lack of RFC. *Jordan*, 548 F.3d at 423; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

Claimant raises multiple challenges to ALJ Eastham's findings. First, Claimant argues that the ALJ never explained "why [Claimant's] daily episodes of dizziness and intermittent episodes of lightheadedness" were consistent with the determined RFC. [R. 19, p. 8]. The claimant argues that the burden is on the ALJ at this stage. *Id.* at 9. This objection was made before the Magistrate Judge, who determined that Claimant was "improperly attempt[ing] to shift the burden of proof to ALJ Eastham." [R. 18, p. 17–18]. The Court agrees. An ALJ is required to consider the entire medical record when making an RFC determination. There is no evidence that ALJ Eastham failed

to do so. He "considered all symptoms," including the tilt-table test, medical office visits, gastrointestinal impairments, MRI imaging, among other symptoms. [Tr. 17–19]; *see also* [R. 18, pp. 16–18]. The burden is on the claimant to show that the ALJ failed to consider the medical record when making the RFC determination. The Court finds that Claimant has not put forward substantial evidence to show that ALJ Eastham did not consider all of the medical evidence when making Claimant's RFC determination.

Second, Claimant argues that ALJ Eastham's RFC analysis did not comport with SSR 96-8p. [R. 19, p. 10]. SSR 96-8p states that an ALJ's assessment of a claimant's RFC "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 61 Fed. Reg. 34474, 34478 (July 2, 1996). It requires an ALJ's RFC finding to address in a function-by-function evaluation both the exertional and nonexertional capabilities of an individual. *Id.* at 34476–77. Exertional limitations relate to an individual's ability to sit, stand, walk, lift, carry, push, and pull. *Id.* at 34477. Nonexertional limitations relate to an individual's potential postural, manipulative, visual, communicative, and mental limitations and ability to tolerate various environmental factors. *Id.* However, "case law does not require the ALJ to discuss those capacities for which no limitation is alleged." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002) (per curiam); *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 729 (6th Cir. 2013). Here, ALJ Eastham stated that he "carefully" considered "the entire record" to determine Claimant's RFC, including "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and 416929 and SSR 16-3p." [Tr. 17]. Moreover, the ALJ exhaustively reviewed the medical evidence and nonmedical evidence. *See id.*

15

at 17–23. As the Magistrate Judge summarized in the Recommendation,

> ALJ Eastham conducted an in-depth review of Claimant's POTS symptoms throughout the medical record. In doing so, ALJ Eastham noted Claimant's reports of syncopal episodes in 2018, her tilt table test results, her echocardiogram results, records reflecting almost daily dizzy spells in October 2019, reports of her symptoms improving in May 2020 after starting Florinef therapy, and reports in December 2020 and July 2021 of intermittent lightheadedness. He determined the record did not support Claimant's allegations regarding the intensity and frequency of her POTS. Ultimately, however, ALJ Eastham's RFC accounted for Claimant's ongoing POTS symptoms by restricting her to occasional climbing of ramps with no climbing of stairs, ladders, ropes or scaffolding; frequent balancing and stooping; occasional crouching and kneeling but never crawling; never working at unprotected heights; never working with dangerous machinery; and never operating motorized vehicles as a work requirement.

[R. 18, pp. 16–17 (internal citations omitted)]. For this reason, the Court finds that ALJ Eastham's explanation of his evaluation of symptoms did comport with SSR 96-8p.

Claimant also alleges that the Magistrate Judge and ALJ Eastham violated SSR 96-9p. SSR 96-9p is a guidance document that includes information that an ALJ uses to evaluate the need for a hand-held assistive device. SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996).

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case.

SSR 96-6p. There is evidence to show that ALJ Eastham thoroughly considered the particular facts of Claimant's case:

> The medical evidence of record does not demonstrate the medical necessity of an assistive device for ambulation. At the hearing, the claimant testified she needs an ambulatory device. There is one notation in the objective record regarding an assistive device. During a six-minute telehealth visit in May 2020, the claimant requested and was prescribed a wheeled walker for orthostatic hypotension and pre-syncopal episodes. In a July 2022 patient questionnaire completed by the claimant, she reported a number of symptoms but did not indicate she uses a cane or a walker. (Ex. 8F page 26; Ex. 20F page 16) There are no other notations concerning a walker or a cane. Current regulations require a "documented medical need" for any type of

> assistive device, meaning that there is evidence from a medical source that supports the medical need for a continuous period of at least 12 months. This evidence must describe any limitations in upper or lower extremity functioning and the circumstances for which there is a need to use the assistive device. The evidence must describe how the claimant actually walks with the device. (Listing 1.00(C)(6)). From a review of the record, the undersigned finds the evidence establishing the need to use a cane/walker, even with the prescription, is non-existent. There is no documentation regarding a medical need for at least 12 months, and there is no description of how the claimant must use (or actually uses) the device, and thus the requirements for a "documented medical need" are not met. The claimant's medical examinations throughout the period do not mention use of a cane or walker except as noted herein. The record does not establish medical necessity for a cane or walker and there is no objective evidence corroborating the claimant's allegations that such device is required.

[Tr. 20]. Nothing in the record supports Claimant's claim that ALJ Eastham considered one piece of evidence to be dispositive of whether her walker was medically required. Instead, the record shows that ALJ Eastham evaluated the medical evidence but determined that Claimant's walker did not meet "the requirements for a documented medical need," a requirement listed in SSR 96-8p. *Id.* (internal citations omitted). In particular, ALJ Eastham considered the number of times an assistive device was mentioned (or not) in the record; he determined that there was only "one notation" about "an assistive device" and found that nowhere else in the record did a medical professional mention the need for an assistive device for any period of time. *Id.* Moreover, there was no documentation of "how the claimant actually walks with the device," which ALJ Eastham found to be required under Listing 1.00(C)(6) to show a medical need. *Id.* There is substantial evidence to support that ALJ Eastham considered all of the evidence in the record to determine that the walker was not a "medically required" assistive hand-held device. *Id.*

### C. Medical Evidence and Subjective Complaints

#### i. Medical Evidence

The Court turns to Claimant's challenges concerning ALJ Eastham's consideration of the relevant medical evidence. ALJ Eastham recognized "echocardiogram noted normal left

ventricular systolic function; normal diastolic function of the left ventricle; and no hemodynamically significant valvular abnormalities. Tilt table test was positive for neurocardiogenic pathology and showed evidence of POTS." [Tr. 19]. Beyond this, however, ALJ Eastham noted the "the record does not support the claimant's allegations regarding the intensity and frequency of POTS related episodes or migraine headaches." *Id.*

Claimant presents three challenges to the medical opinion evidence, all relating to Claimant's clinical social worker, Nicole Abbott, LCSW: ALJ Eastham's decision to allow contact with coworkers and supervisors but not the public; ALJ Eastham's consideration of Abbott's findings; and ALJ Eastham's compliance with § 404.1520c(b)–(c). [R. 19, pp. 17–20].

In her "MEDICAL OPINION RE: ABILITY TO DO WORK-RELATED ACTIVITIES (MENTAL)," Abbott opined that:

> [d]ue to severe anxiety and depression, [Claimant] has panic attacks when under stress, has trouble with attention and concentration and could have confusion and inability to communicate appropriately with others. Due to autism, [Claimant] would not be able to handle changes in routine or have the ability to socially interact with others appropriately.

[Tr. 1085]. Abbott's assessment included that Claimant would have "no useful ability to function" regarding certain mental abilities and stated that Claimant "would not be able to adhere to and remember detailed instructions but would feel overwhelmed." *Id.* Further, due to Claimant's "autism and anxiety," Abbott found that Claimant would have difficulty "interact[ing] with the general public and be[ing] socially appropriate." *Id.* at 1086.

Claimant objects to the ALJ's failure to describe why he allowed contact with supervisors and coworkers. Specifically, Claimant notes that "[n]o specific evidence was cited[,] and it was not explained why a person with the severe impairments of anxiety and depression and a longitudinal history of isolation and not going out without a parent could interact with supervisors

and coworkers but not the public." [R. 19, pp. 17–18]. The Magistrate Judge determined that Claimant had not put forward evidence showing that she was unable to handle any contact with "coworkers and supervisors." [R. 18, p. 35]. Moreover, the Magistrate Judge reiterated that the ALJ is not required to "discuss his decision not to adopt every limitation from an opinion." *Id.* Claimant has still not pointed to any evidence to show why she would not be able to have contact with supervisors and coworkers. And, it is evident from the record that ALJ Eastham considered Claimant's level of contact with supervisors and coworkers. [Tr. 23]. ALJ Eastham found that interaction with coworkers and supervisors "occasionally" was "well supported by the findings cited[,] including the normal mental status exams in the treating record and the efficacy of the medication." *Id.* Further, in his findings for step 3, ALJ Eastham noted that, "[i]n interacting with others," Claimant is able to hold conversations with friends and family, is "pleasant and cooperative," and "has a good rapport with providers." *Id.* at 16. "She typically has normal mood and affect," and "[s]he does not appear to have any problem getting along well with providers and staff." [Tr. 16]; *see also* [Tr. 694–95, 709 (explaining how Claimant "appear[ed] euthymic" at previous appointments with her providers)]. Thus, the Court finds that the ALJ did not err by finding that Claimant is able to interact with coworkers and supervisors.

The new regulations for evaluating medical opinions are applicable here since Claimant's claim was filed after March 27, 2017. *See* 20 C.F.R. § 404.1520c. Under the new regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a). An administrative law judge must consider "supportability, consistency, relationship [with the claimant], specialization, and other factors" when determining the persuasiveness of an opinion. 20 C.F.R. 404.1520c(c)(1)–(5). But

the administrative law judge need only explain how she considered the supportability and consistency factors, which are the two most important in determining the persuasiveness of a medical source's opinion or a prior administrative medical finding. 20 C.F.R. § 404.1520c(b)(2). The more relevant the objective medical evidence and supporting explanations presented, the more persuasive the medical opinion(s) will be. 20 C.F.R. § 404.1520c(c)(1). The more consistent the medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive it will be. 20 C.F.R. § 404.1520c(c)(2).

Claimant alleges that ALJ Eastham did not comply with § 404.1520c(b)–(c) because he provided "generalizations" and did not discuss the required factors listed above. [R. 19, p. 19]. In particular, Claimant argues that ALJ Eastham did not list and adequately discuss all four factors (supportability, consistency, relationship with the claimant, and specialization) in his evaluation of Abbott's report. *Id.* at 19–20.

> In considering Abbott's opinion, ALJ Eastham provided the following:
>
> The narrative contained in this form would support the limits cited; however, the limits are not consistent with the other evidence of record including her actual corresponding treating notes and the mental status exams of multiple medical providers. The longitudinal record notes occasional abnormal findings such as depressed or anxious mood and poor insight/judgment but looking at the overall record, the mental status exams are typically within normal limits as described herein. Given the discrepancy between treating exams and the limits and rationale cited in the assessment, the undersigned finds the assessment is not persuasive.

[Tr. 22]. ALJ Eastham stated he did not find Abbott's opinion persuasive because it was not consistent with, or supported by, the overall record. Indeed, the records ALJ Eastham cites show "occasional abnormal findings such as depressed or anxious mood and poor insight/judgment but looking at the overall record, the mental status exams are within normal limits as described herein." *Id.* And though they document Claimant's complaints of anxiety and associated symptoms, *see id.* at 531, they also document times where Claimant's symptoms were improving, *id.*, and she denied

suicidal ideations and was "euthymic." *Id.* Because of the discrepancies between the overall record and Abbott's reports, ALJ Eastham did not find her medical opinion persuasive. Still, as the Magistrate Judge pointed out, ALJ Eastham considered Abbott's report enough to adopt one of her findings. He added "an RFC limitation that benefits Claimant, even if he otherwise found Ms. Abbott's opinion was wholly unpersuasive." [R. 18, p. 34]. Overall, ALJ Eastham considered both the supportability and consistency factors and presented his findings when discussing Abbott's medical opinion evidence. As noted above, an ALJ need not explain how he or she considered the remaining factors. 20 C.F.R. § 404.1520c(b)(2).

Having considered his thorough analysis, the Court finds that substantial evidence supports ALJ Eastham's finding that Abbott's assessment is unpersuasive. ALJ Eastham complied with the regulations by discussing both the supportability and consistency of the assessment, and he thoroughly considered the objective medical evidence that contradicts many of Abbott's findings, which he expressly referenced in his opinion. Moreover, it is worth noting that some of Abbott's proposed limitations come in the form of a "check-box analysis" with a few fill-in-the-blank questions, *see* [Tr. 1085], which administrative law judges may appropriately afford little weight. *See Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474 (6th Cir. 2016) (noting that reports, where the physician's only obligation is to check a box or fill in a blank, are generally weak evidence at best); *Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 567 (6th Cir. 2016) (recognizing that an ALJ can properly give check-box forms "little weight where the physician provided no explanation for the restrictions entered on the form and cited no supporting objective medical evidence"). ALJ Eastham did not err in finding this assessment unpersuasive since he found it was inconsistent with the medical evidence as a whole.

### ii.   Subjective Complaints

Claimant argues that ALJ Eastham evaluated her subjective complaints using a "selective reading of the record." [R. 19, p. 13]. Specifically, Claimant states that evidence that she does not have a driver's license, lives with her mother, and has a service dog were not considered by the ALJ. *Id.* at 13–14. Claimant further argues that because the ALJ did not consider this additional evidence, he failed to follow 20 C.F.R § 404.1529(c) and § 416.929(c)(3), which involve an ALJ's evaluation of objective and subjective complaints. *Id.* at 13–16.

In evaluating the claimant's subjective complaints, the ALJ considers objective medical evidence, as well as other non-exhaustive factors such as evidence of daily activities, the frequency and intensity of pain, medication taken and any resulting side effects, and any other measures taken to alleviate the pain. *See* 20 C.F.R. §§ 404.1529(c)(2)–(3), 416.929(c)(2)–(3).[1] A claimant's

---

[1] 20 C.F.R. § 404.1529(c) states:

> Evaluating the intensity and persistence of your symptoms, such as pain, and determining the extent to which your symptoms limit your capacity for work. . .
> (2) Consideration of objective medical evidence. Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption. Objective medical evidence of this type is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work. We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled. However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.
> (3) Consideration of other evidence. Because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will carefully consider any other information you may submit about your symptoms. The information that your medical sources or nonmedical sources provide about your pain or other symptoms (e.g., what may precipitate or aggravate your symptoms, what medications, treatments or other methods you use to alleviate them, and how the symptoms may affect your pattern of daily living) is also an important indicator of the intensity and persistence of your symptoms. Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions that your medical sources or nonmedical sources report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account as explained in paragraph (c)(4) of this section in reaching a conclusion as to whether you are disabled. We will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your medical sources, and observations by our employees and other persons. Section 404.1520c explains in detail how

statement that she is experiencing pain or other symptoms will not, taken alone, establish that she is disabled. *See* 20 C.F.R. § 404.1529(a); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997); *Duncan v. Sec'y of Health & Hum. Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). The Sixth Circuit's guidelines for evaluating a claimant's subjective assertions of disabling pain are set forth in *Duncan v. Sec'y of Health & Hum. Servs.*, 801 F.2d 847, 853 (6th Cir. 1986):

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Duncan*, 801 F.2d at 853. Still, "[e]ven when the record contains [medical evidence establishing one of the guidelines], the ALJ may also consider the credibility of the claimant's subjective complaints." *Steagall v. Comm'r of Soc. Sec.*, 596 F. App'x 377, 381 (6th Cir. 2015). And if the ALJ determines that the subjective complaints are not consistent with the objective medical evidence, he may "discount a claimant's credibility." *Id.* Further, "great weight" is afforded to the ALJ's credibility determination. *Id.* (quoting *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007)).

    Based on the evaluation, and upon independent review of the record as a whole, the Court

---

we consider medical opinions and prior administrative medical findings about the nature and severity of your impairment(s) and any related symptoms, such as pain. Factors relevant to your symptoms, such as pain, which we will consider include:

(i) Your daily activities;

(ii) The location, duration, frequency, and intensity of your pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

finds that substantial evidence supports ALJ Eastham's assessment of the medical evidence and Claimant's subjective complaints generally. Although, as Claimant notes in her brief, she reported her symptoms to medical personnel, her statements concerning pain, taken alone, are not enough to show that she is disabled. [R. 19, p. 4]; *see* 20 C.F.R. § 404.1529(a); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997); *Duncan v. Sec'y of Health & Hum. Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). Here, ALJ Eastham found that, while "[C]laimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," the claimant's subjective complaints "concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." [Tr. 18]. The ALJ does not have to discuss each individual factor and how it comports with the record evidence. *Karen F. v. Comm'r of Social Sec.*, No. 2:22-cv-2951, 2023 WL 3740784, at *4 (S.D. Ohio May 31, 2023). ALJ Eastham complied with the regulations by considering the record, and not just Claimant's subjective complaints or cherry-picked medical findings, in fashioning Claimant's RFC. ALJ Eastham considered the objective medical evidence, Claimant's treatment history, and Claimant's own hearing testimony and cited to the corresponding evidence. [Tr. 15–23]; [Tr. 332–341]; [Tr. 477–533]; [Tr. 562–69, 573–78, 587–90, 599–600, 605–10, 669–78]. In addition, ALJ Eastham considered the claimant's daily activities in forming the RFC. ALJ Eastham noted that: "Mentally, the claimant can perform chores, prepare meals, go to doctor's appointments, take medications, shop, and play video games." *Id.* at 16. ALJ Eastham further acknowledged that "[d]espite the claimant's allegations regarding the severity of her symptoms, she appears to travel regularly, engages in normal social and leisurely activities, and interact[s] with others on a regular basis." *Id.* at 21. Finally, the ALJ also noted, based on Claimant's testimony, "that she was spending more time 'spinning wool' and

playing video games with friends" after reporting that she was lonely without her boyfriend and other online video gamers. *Id.* at 21–22. When evaluating the objective medical evidence for consistency with the ability to engage in these activities, the ALJ considered the Claimant's own statements that "she [was] doing well on medication" and "had returned to her gaming activities[,] and she denied any depression." *Id.* After carefully considering the entire record in this case, ALJ Eastham reasonably concluded that the objective medical evidence, treatment history, and Claimant's testimony, failed to corroborate Claimant's allegations of disabling impairments.

### D. Mother's Third-party Report

The claimant next objects to ALJ Eastham's evaluation of the third-party medical report submitted by Claimant's mother. The claimant argues that ALJ Eastham did not "cite the medical records that contradicted the specific functions that the mother identified." [R. 19, p. 20]. The claimant also took issue with the fact that the Magistrate Judge agreed with the ALJ's assertion that the third-party report "supported Claimant and her allegations but not that the report was supported by the overall evidence of the record." *Id.* (quoting [R. 18, p. 43]).

Defendant responded by claiming that this objection is improper because it concerns the ALJ's decision, rather than the Report and Recommendation of the Magistrate Judge. [R. 20, p. 16]. In addition, Defendant asserts that this argument involves a new argument about the ALJ's failure to state contradictory evidence to the report and the consistency of the third-party report with one of the medical reports. *Id.* While the Court agrees with Defendant's argument that the objection is improper, the Court finds that the objection fails on the merits as well. *See Extine v. Comm'r of Soc. Sec.*, No. 3:21-CV-2278, 2023 WL 5198502, at *1 (N.D. Ohio Aug. 14, 2023) ("Plaintiff merely rehashes and summarizes his original arguments against the ALJ. . . . This is not a proper objection."); *see also Nasser v. Comm'r of Soc. Sec.*, 598 F.Supp.3d 614, 626 (E.D. Mich.

2022) (finding that a claimant must object to the Report and Recommendation, not just "the ALJ's finding," to make a proper objection under Fed. R. Civ. P. 72(b)).

An ALJ must "actually evaluate the evidence, compare it to [the relevant listed impairment], and give an explained conclusion, in order to facilitate meaningful judicial review." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011). An ALJ does not, however, have to find a third-party report to be persuasive evidence of a claimant's impairment.

ALJ Eastham specifically mentioned the mother's third-party report in his decision, writing that he

> considered the third-party function report of [Claimant's mother]. . .but is not persuaded that the observations and opinions reported by the claimant's mother warrant finding a more restrictive residual functional capacity than stated above when considered in light of the claimant's own representations and descriptions of her problems, activities of daily living and work history, or when weighed for consistency against the medical evidence.

[Tr. 23]. Claimant may disagree with how ALJ Eastham considered the mother's third-party report, but the Court finds that there is substantial evidence to support ALJ Eastham's decision regarding the report.

### E.  Vocational Evidence

Claimant's final objection concerns the hypothetical questions presented to the Vocational Expert at Step 5. Specifically, Claimant argues that because ALJ Eastham did not question the Vocational Expert about Claimant's lightheadedness and dizziness, "the hypothetical questions are not representative of the claimant." [R. 19, p. 21]. Claimant's argument is undeveloped, repeating the same basic objection made before the Magistrate Judge's Report and Recommendation. [R. 12, pp. 16–17]. It is well settled that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999) (citing *McPherson v. Kelsey*,

125 F.3d 989, 995–96 (6th Cir. 1997)); *see also Brindley v. McCullen*, 61 F.3d 507, 509 (6th Cir. 1995) (observing that "[w]e consider issues not fully developed and argued to be waived"). Nevertheless, the Court finds that the ALJ did not err by not including questions about dizziness and lightheadedness when presenting questions to the Vocational Expert.

"In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010). "Hypothetical questions, however, need only incorporate those limitations which the ALJ has accepted as credible." *Parks v. Social Sec. Admin.*, 413 F. App'x 856, 865 (6th Cir. 2011) (quoting *Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1235 (6th Cir.1993)).

Here, Claimant asserts that the ALJ did not ask about dizziness and lightheadedness, which can result in "unsteadiness or loss of balance and spatial analysis." [R. 19, p. 9]. While the ALJ did not ask about these symptoms verbatim, it is clear from the record that the ALJ considered these symptoms throughout the hearing and during the Vocational Expert's testimony. In particular, the ALJ asked the Vocational Expert about "an inability to sit, stand, or walk up to an eight-hour maximum, given an eight-hour workday." [Tr. 59–61]. Further, he asked the Vocational Expert about whether taking more than two fifteen-minute breaks per shift for rest would rule out competitive employment. *Id.* An ALJ is not required to use the "exact language" of symptoms, so long as "he incorporate[s] [a claimant's] credible mental and physical impairments. *Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 865 (6th Cir. 2011). It is unclear why Claimant believes that additional questions were necessary to cover these two symptoms. Even so, the Court finds substantial evidence to support the ALJ's questions presented to the

Vocational Expert and that he fully considered those answers when making his decision on Claimant's claim.

As a closing note, an ALJ's decision may be supported by substantial evidence "even if that evidence could support a decision the other way." *Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). While there might be evidence in the record that could support a contrary conclusion, it is clear ALJ Eastham thoroughly considered all evidence of record, and the Court finds no error in his decision.

## IV.     Conclusion

For all these reasons, the Court will overrule the claimant's objections, adopt Magistrate Judge Edwards's Report and Recommendation, and affirm the Commissioner's decision.

**IT IS THEREFORE ORDERED** as follows:

1. Magistrate Judge Edwards's Report and Recommendation [**R. 18**] is **ADOPTED** as the opinion of the Court.

2. Claimant's Objections to the Report and Recommendation [**R. 19**] is **OVERRULED**.

3. The final decision of the Commissioner is **AFFIRMED**.

4. A separate Judgment will be entered consistent with this Order.

This the 24th day of September, 2024.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

Copies:          Counsel of Record